UNITED STATES of America,
Plaintiff-Appellant,

v.

329.73 ACRES OF LAND, SITUATED IN GRENADA AND YALOBUSHA COUNTIES, STATE OF MISSISSIPPI, and J.G. Carter, et al., Defendants-Appellees.

No. 80–3520.

United States Court of Appeals,
Fifth Circuit.

May 12, 1983.

Maria A. Iizuka, James W. Moorman, Jacques B. Gelin, Dept. of Justice, Lands Div., Washington, D.C., for plaintiff-appellant.

Oscar P. Mackey, Jackson, Miss., E. Russell Blair, Oxford, Miss., Jim R. Bruce, Kennett, Mo., for defendants-appellees.

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

TATE, Circuit Judge:

On the appeal in this eminent domain proceeding, the defendant landowner moves for the recovery of attorneys' fees and litigation expenses against the United States, the condemnor. The landowner's motion is based upon section 204(a) of the Equal Access to Justice Act of 1980 (the "Act"), 28 U.S.C. § 2412(d)(1)(A), which provides that a court "*shall*" award such expenses to a "prevailing party" against the United States in any non-tort civil action, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The panel, which affirmed the condemnation award in favor of the landowner, refused to consider relief under this motion, holding that the Act does not apply to eminent domain cases, so that a landowner was not entitled to attorneys' fees against the United States even if the latter's position at the trial or on appeal was substantially *un*justified. 666 F.2d 281, 285 & n. 3 (5th Cir.1982); 678 F.2d 21, 22–23 (5th Cir.1982) (denial of panel rehearing).[1] We granted the landowner's application for rehearing en banc, 681 F.2d 264 (5th Cir.1982), to consider his contention that this ruling was erroneous.[2] We reverse, finding that both the unambiguous wording and the legislative history of the Act require its application to eminent domain cases as well as to other civil suits brought by or against the United States.

I.

The Equal Access to Justice Act, Pub.L. No. 96–481, 94 Stat. 2325 (1980), effective October 1, 1981, was enacted with the broad purpose of awarding litigants expenses of seeking review of or defending against unreasonable government action.[3] The legis-

---

1. The case arises out of litigation involving payment of just compensation for two easements acquired by the government. The United States acted to acquire these easements on September 8, 1977 by filing a Declaration of Taking and depositing $6350 into the registry of the court, pursuant to the Declaration of Taking Act, 40 U.S.C. § 258a. Objecting to the amount offered as just compensation, the landowner brought suit on the issue of the amount of just compensation for the taking. After trial, the jury awarded $48,620 for the value of the easements, which the government protested on retrial (in which the jury awarded the identical amount) and on appeal as excessive. A panel of this court found that there was a reasonable basis for the jury verdicts establishing the value of the property. 666 F.2d 281 (5th Cir.1982).

2. The application for en banc rehearing also requested review of the panel's refusal to allow more than 6% interest as post-trial judgment delay compensation. *See* Part IV of opinion, *infra*.

3. The findings and purpose of the Act are set forth in its § 202(a), 94 Stat. 2325 (1980):

    (a) The Congress finds that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings.

    (b) The Congress further finds that because of the greater resources and expertise of the United States the standard for an

lative history of the Act makes clear that Congress intended to help small litigants vindicate their rights, challenge regulations or agency action that they would otherwise comply with in order to avoid paying the costs of litigation, and impose the risk of a fee award that must be paid by the agency as an incentive for agencies to police their enforcement and litigation activities so that only well-founded cases would be initiated or litigated.[4] Congress recognized, with respect to individuals or small businesses subject to extensive federal regulation, that "the Government with its greater resources and expertise can in effect coerce compliance with its position. . . . This kind of truncated justice undermines the integrity of the decision making process. . . . An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4988–89. The proponents of the Act expressed a similar concern that agencies could, by discretionary use of enforcement and litigation tactics, "target" smaller businesses or individuals less financially able to defend themselves and thus more easily obtain settlements or victories. *Id.*

Before enactment of this statute, it was possible for a prevailing private party to obtain judgment for *costs* (but not attorneys' fees) against the United States, *see* former 42 U.S.C. § 2412, 80 Stat. 308 (1966). The courts adhered, however, to the "American rule," that each party to litigation bear his own attorney expenses, unless the prevailing party could invoke a specific statute

that awarded fees in certain categories of cases or one of the common law exceptions that had developed for parties bringing frivolous cases in bad faith or where the litigation provided a "common benefit" to the public or created a fund from which nonparties could benefit. *See generally* Robertson & Fowler, Recovering Attorneys' Fees From the Government Under the Equal Access to Justice Act, 56 Tul.L.Rev. 903, 909–11 (1982). The common law exceptions, however, did not apply to the United States because of its sovereign immunity. *Id.* at 903. Section 2412, as amended by the Act, thus significantly modified the traditional rules concerning fee-shifting in order to facilitate private challenges to unreasonable government action. *See also* Conference Report, H.R.Rep. No. 1434, 96th Cong., 2d Sess. 21 (Sept. 30, 1980); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9–10 (September 26, 1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4994, 4998; Sen.Rep. No. 253, 96th Cong., 1st Sess. 5 (June 21, 1979) (American rule, with respect to litigation involving the government, deters and discourages private parties from litigating governmental claims).

A specific statutory purpose of the Act was that "because of the greater resources and expertise of the United States the standard for award against the United States should be *different* from the standard governing an award against a private litigant, in certain situations." Section 202(b) (emphasis added). Accordingly—*in addition to* other provisions that in general made the United States liable for attorneys' fees in circumstances where a private litigant

award of fees against the United States should be different from the standard governing an award against a private litigant, in certain situations.
   (c) It is the purpose of this title—
   (1) to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States; and
   (2) to insure the applicability in actions by or against the United States of the common

law and statutory exceptions to the "American rule" respecting the award of attorney fees.

**4.** *See* 126 Cong.Rec. S14215 (daily ed. Oct. 1, 1980) (statement of Sen. Domenici); H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 10 (1980); S.Rep. No. 253, 96th Cong., 1st Sess. 5 (1979). *See generally* Robertson & Fowler, Recovering Attorneys' Fees From the Government Under the Equal Access to Justice Act, 56 Tul.L.Rev. 903, 914 (1982).

would be liable[5]—by section 204(a), 28 U.S.C. § 2412(d), the Act provided that "any court having jurisdiction" of any civil action (other than cases sounding in tort) "brought by or against the United States" "*shall* award" to "a prevailing party other than the United States" attorneys' fees and litigation expenses (in addition to costs) incurred by that party—"unless the court finds that the position of the United States was substantially unjustified or that special circumstances make an award unjust." § 2412(d)(1)(A).[6]

The legislative reports explained the intended mechanics and test for applying this provision as follows: "After a prevailing party has submitted an application for an award, the burden of proving that a fee award should not be made rests with the Government. The test of whether the Government position is substantially justified is essentially one of reasonableness in law and fact." Conference Report, H.R. Rep. 1434, *supra,* at 22; *see also* H.Rep. 1418, *supra,* at 10–11, U.S.Code Cong. & Admin.News, p. 5011; Robertson and Fowler, *supra,* 56 Tul.L.Rev. at 928–34. *See also* Part II.*B* of this opinion ("Prevailing Party"), *infra.*

## II.

The Act, then, manifests a broad legislative purpose to afford a remedy to private litigants to recover their attorneys' fees and litigation expenses when the federal government has unreasonably caused them to be incurred. Moreover, section 204(a), 28 U.S.C. § 2412(d)(1)(A) expressly requires that "*any* court" in which the private party is a prevailing party in a non-tort civil action "*shall*" award the private litigant his attorneys' fees and litigation expenses unless the government proves that its position was "substantially justified".

Despite these broad statutory purposes and language, the government contends that § 2412(d) does not apply to eminent domain cases and does not permit the award to a landowner of his attorneys' fees and litigation expenses even if the government's position in condemnation cases is unreasonable and not "substantially justified". We may summarize the government's contentions, some of which were accepted by the panel that initially decided the appeal, as follows:

*A.* The award of attorneys' fees in condemnation cases against the government was already authorized, in limited circumstances, by 42 U.S.C. § 4654, and the imposition of costs in such cases was specially regulated by Fed.R.Civ.P. 71A(*l*) (1951). The 1980 Equal Access to Justice Act was not intended to affect or supersede these provisions, nor to change the prior jurisprudence that (except as there waived) the sovereign immunity of the United States prevented further imposition of fees or expenses of litigation upon the United States.

---

**5.** To achieve its goals, the Act also (1) permitted awards of costs to be made against the United States, 94 Stat. 2327, amending 28 U.S.C. § 2412(a); (2) provided for the assessment of attorneys' fees and expenses incurred by parties in connection with administrative proceedings, § 203(a), 94 Stat. 2325, amending 5 U.S.C. § 504; (3) prescribed that "[u]nless expressly provided by statute, a court *may* award reasonable fees and expenses of attorneys" in any civil action brought by or against the United States, and that the United States shall be liable for such fees to the same extent as any other party would be liable (thereby removing the traditional sovereign immunity of the United States against applying existing common law exceptions to the American rule), § 204(a), 94 Stat. 2328, codified at 28 U.S.C. § 2412(b); and (4) repealed Fed.R.Civ.P. 37(f),

that had formerly prohibited as a discovery sanction (available against all other parties) the award of attorneys' fees and expenses against the United States, § 205(a), 94 Stat. 2330.

**6.** 28 U.S.C. § 2412(d)(1)(A) in full provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*B.* Under settled interpretations of these earlier provisions and of 28 U.S.C. § 2412 (before its re-enactment by the Act as § 2412(a) in 1980), the landowner whose property was condemned was not the "prevailing party". Since the 1980 Act only authorizes imposition of attorneys' fees against the United States in favor of a prevailing party, it therefore does not apply to eminent domain cases.

We below examine these contentions and find them without merit.

### A. *Statutory Intent of the 1980 Act to Apply to Condemnation Cases*

Prior to the enactment of the 1980 statute, the Supreme Court held that attorneys' fees and litigation expenses are indirect costs that are not part of the just compensation for a taking that is required by the Fifth Amendment, also indicating that allowance of such expenses is a matter of legislative grace. *United States v. Bodcaw Company,* 440 U.S. 202, 203, 99 S.Ct. 1066, 1067, 59 L.Ed.2d 257 (1979). While so doing, the court further pointed out: (a) the settled rule that "litigation costs cannot be imposed against the United States in the absence of statutory authority", 440 U.S. at 203 n. 3, 99 S.Ct. at 2067 n. 3; (b) that the only then-present statutory authorization to impose court costs against the United States in certain instances, 28 U.S.C. § 2412 (1966)[7] (subsequently re-enacted by the 1980 Act as 2412(a)) had been held not to apply to condemnation cases, *id.;* and (c) that the (then) only existing authority to allow the property owner "reasonable litigation expenses" (including attorneys' fees) in condemnation cases was 46 U.S.C. § 4654,[8] which provides for the imposition of these expenses against the United States only in the limited instances "when the condemnation is dismissed as not authorized" or "when the Government abandons a condemnation" after instituting it. 440 U.S. at 204, 99 S.Ct. at 1067.

In noting that compensation for litigation expenses "is a matter of legislative grace rather than constitutional command", *Bodcaw* also observed that "[p]erhaps it would be fair or efficient to compensate a landowner for all the costs he incurs as a result of a condemnation action" and that by 42 U.S.C. § 4654 (*see* note 8 *supra*)

---

7. 28 U.S.C. § 2412 ("Costs") (1966) then provided:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title but not including the fees and expenses of attorneys may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action. A judgment for costs when taxed against the Government shall, in an amount established by statute or court rule or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by him in the litigation. Payment of a judgment for costs shall be as provided in section 2414 and section 2517 of this title for the payment of judgments against the United States.

Except for deletion of the last sentence (provided for in a subsequent subsection), this provision was re-enacted with minor insubstantial variance in language as § 2412(a) of the 1980 Act.

The reason that the pre-1980 Act § 2412 provision was held to be inapplicable to eminent domain cases—where court costs were then assessed against neither party—was based upon the legislative history of its 1966 expansion to allow court costs against the United States in certain (other) instances. The legislative intent then was to correct a disparity (in noncondemnation cases) in the imposition of costs where then only the United States and not the private litigant received court costs in the event of prevailing. *United States ex rel. TVA v. An Easement,* 452 F.2d 729, 730–31 (6th Cir.1971), *followed by United States v. 2,176.63 Acres of Land,* 464 F.2d 676 (10th Cir.1972).

8. 42 U.S.C. § 4654(a) provides in full:

> (a) The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, if—
> (1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or
> (2) the proceeding is abandoned by the United States.

Congress had already "moved in that direction." 440 U.S. at 204, 99 S.Ct. at 1067. *Bodcaw* thus did not intimate other than that the *then* existing statutory law did not authorize the award of litigation expenses to the condemnee landowner and that Congress need enact further provision to allow for their recovery in eminent domain cases. The express statutory wording and the legislative history of the Equal Access to Justice Act of 1980 show that, indeed, the Congress did by the Act provide for the award of such litigation expenses in eminent domain cases, at least where the government's position was not "substantially justified", as well as in other non-tort civil cases.

Section 2412(d)(1)(A) of the Act requires the award (except where the position of the government is substantially justified) of attorneys' fees and litigation expenses to a prevailing private party "in any civil action (other than cases sounding in tort) brought by or against the United States." In its denial of rehearing, the panel opinion noted that "[a] condemnation case is a civil case, and the statute does, indeed, except only tort actions", and that, "[i]f we looked only to these words," their plain meaning would include condemnation cases within the application of the statute. 678 F.2d at 22. Nevertheless, the panel accepted the government's contention that no legislative intent was shown to afford a broader remedy in eminent domain cases than that provided by 42 U.S.C. § 4654, which the government argues is one of the "existing fee-shifting provisions" that was excepted from the application of the Act and not intended to be modified by it.

As enacted, section 2412(d)(1)(A) provides that, *"[e]xcept as otherwise specifically provided by statute"*, the court *"shall"* afford

attorneys' fees and litigation expenses to a private party prevailing against the United States. The same excepting provision was in the bill as originally introduced. S. 265, 96 Cong., 1st Sess. (introduced January 31, 1979), Sec. 4. (a) (amending 28 U.S.C. § 2412, to provide a subsection (d)(1) in substantially the same form as finally enacted, including the exception clause).[9] The legislative reports explained the purposes of the exception clause. In deference to the concerns of civil rights groups, Congress specifically did not intend to lessen the remedy provided in "existing fee-shifting statutes" through enactment of the new remedy providing for the award of attorneys' fees in *all* non-tort civil cases. (The 1980 Act limited the award to instances where the government's position was not substantially justified, as contrasted with the civil rights fee statutes, in which the plaintiffs ordinarily were entitled to recover their attorneys' fees simply upon prevailing.) H.R. Rep. 1418, *supra,* esp. at 6, 8–10, 18–19.

With reference to section 2412(d)(1)(A), the committee report explains what type of fee-shifting actions were excepted from modification. As the committee report states, *id.* at p. 18:

> The subsection applies to all civil actions except those sounding in tort (but does not exclude Constitutional torts) and those already covered by existing fee-shifting statutes. Tort cases were excluded because the bill's sponsors considered the legal remedies adequate and equitable in those cases. Moreover, this section is not intended to replace or supercede any existing fee-shifting statutes such as the Freedom of Information Act, the Civil Rights Acts, and the Voting Rights Act in which Congress has indi-

---

**9.** The provision as introduced provided:

"Sec. 4.(a), 2412 of Title 28, U.S.Code, as amended to read as follows:

2412. Costs and Fees.

\* \* \* \* \* \*

(d)(1) In addition to the costs which may be awarded pursuant to subsection (a) and *except as otherwise specifically provided by statute,* a court shall award fees and other expenses to any party other than the United

States which prevails in any civil action (other than cases sounding in tort or cases arising under the internal revenue laws of the United States) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. (Emphasis added.)

cated a specific intent to encourage vigorous enforcement, or to alter the standards or the case law governing those Acts. It is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized.

See also Sen.Rep. 253, supra, at 3–6, 19–22.

The exception was thus intended to exclude those existing fee-shifting statutes from modification by the Act (i.e., insofar as permitting the United States to escape its ordinary liability under these statutes for attorneys' fees to the prevailing party, by showing that its position was substantially justified) in which Congress had provided an attorneys' fee remedy "to encourage vigorous enforcement" of these statutes. Id. Simply stated, 42 U.S.C. § 4654 —which authorized attorneys' fees in eminent domain cases only where the government was without authority to institute a condemnation action or where the government abandoned one after its institution (see note 8 supra)—is not this type of statute. Rather, a condemnation case not falling within one of the limited and rare instances provided for by § 4654, is among those cases as to which the Act was "intended to apply", being one of those civil "cases (other than tort cases) where fee awards against the government are not already authorized." Id. (emphasis added).

In urging that § 2412(d) was not intended to modify § 4654's limited authority to award attorneys' fees in eminent domain cases, the government also relies upon section 206 of the Act. This provides:

Nothing in section 2412(d) of title 28, United States Code, as added by section 204(a) of this title, alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States.

The legislative report explains this provision, however, as being simply intended to "re-enforce" and to "emphasize" the previously explained exception in § 2412(d), i.e., not to "supercede or alter existing statutory authority for fee awards against the government." (Emphasis added.) [10] In virtually identical language, section 206 (as enacted) was in the Senate Bill No. S. 265 ("Equal Access to Justice Act") (section 6) as passed by the Senate on July 31, 1979 by a vote of 94–3. 125 Cong.Rec.S. 10911 to 10926, at 10926 (daily ed. July 31, 1979).

In the House and Senate hearings discussing S. 265, the initial proposal that was almost identical to the statute ultimately adopted, the Department of Justice specifically referred to condemnation proceedings when it vigorously objected to the number and variety of cases that would be subject to fee-shifting because they would contribute to inordinate agency expense and court crowding.[11] Despite these protests, the bill

---

**10.** See H.Rep. 96–1418, supra, at 19 (emphasis added). Section 6 [enacted as Section 206 of the Act] reinforces the statutory language and emphasizes the Congressional intent that the provisions of section 2412(d) of title 28, as added by this bill, shall not supersede or alter existing statutory authority for fee awards against the government.

**11.** See, e.g., Hearings before the Subcommittee on Courts, Civil Liberties and the Administration of Justice Committee of the Judiciary Committee of the House of Representatives, 96th Cong.2d Sess., 507, 508, 518 (1980) (testimony of Assistant Attorney General Alan A. Parker). The Department of Justice's position is clearly stated in a letter of October 17, 1979 from Parker to Congressman Peter Rodino, Chairman of the House Committee on the Judiciary:

Furthermore, bills like S. 265 and its predecessors, S. 1001 and S. 2354, represent an abandonment of recent Congressional practice of providing for fee-shifting only in discrete categories of cases where the Congress has found that the award of attorney fees was essential in ensuring that litigants would not be deterred from vindicating important rights because of a lack of financial resources. Examples of such a careful, "categorical" approach include provisions for awards of attorney fees in suits involving job discrimination, invasion of privacy, voting rights, civil rights violations, and the like. In contrast, S. 265 sweeps with a broad brush, requiring the Government to pay attorney fees in virtually every case that it loses, unless it can establish that its litigation position was substantially justified. Thus, the legislation would apply in contract disputes, social

remained unchanged by the Senate and House Committees with respect to its requirement that the government was to be subject to all non-tort civil cases where its position was not substantially justified. The government, having lost its case before Congress, attempts now to have the courts undo the rejection by Congress of the government's claim that it should not be subjected in eminent domain cases to payment of the landowner's attorneys' fees and litigation expenses occasioned because of the government's unreasonableness in litigation.

■ In light of the legislative language, scope, and purposes of the Act, it is plain to us that Congress intended to expand fee award coverage to all non-tort civil cases such as this one, "where fee awards against the government are not already authorized." H.R.Rep. No. 1418, *supra* at 18, U.S. Code Cong. & Admin.News p. 4997. The savings clause operates to leave intact the more expansive pre-Act fee-shifting statutes that permit award of attorneys' fees against the government when the private litigant simply prevailed—without the additional requirement now formulated for all

other cases that the government's actions be unreasonable.

The Act therefore *supplements,* and does not impermissibly replace or supersede, the pre-existing award provision of 42 U.S.C. § 4654, for award of landowner litigation expenses in the limited situations where the United States cannot acquire or chooses to abandon the land. The Act simply extends authorization for fee awards to cases where the government has ultimately acquired the property, but the landowner succeeded in winning greater compensation than that offered or urged by the government. In an eminent domain case (involving a suit for greater compensation) such as this one, of course, the government may ground its objection on positions of law and fact that substantially justify its objection to the landowner's claim, and in such situations the Act does not authorize the award to the landowner of his litigation expenses. Nevertheless, in light of the broad remedial purpose of the Act and the congressional intent with respect to the savings clause, the authority accorded to the pre-Act fee-shifting statute, § 4654, does not indicate that the fee award coverage of § 2412(d)

security matters, *land condemnation suits,* environmental enforcement actions, and almost every other type of case that the Government litigates without any showing that the availability of a fee-shifting provision is necessary to enable litigants effectively to vindicate their rights in such cases. We submit that this broad-brush approach, which is so contrary to recent Congressional policy in the fee-shifting area, would cause litigation to become more protracted, more time-consuming, and more expensive, and that the only real beneficiaries would be the attorneys who would reap a financial harvest in additional fees. (Emphasis added.)

The Department's view had been set forth in earlier hearings before the Senate committee. For instance, in April 1979 Raymond S. Calamaro, Deputy Assistant Attorney General, testified as to the excessive costs involved in implementing the Act, among other objections. With specific reference to eminent domain proceedings, he stated:

The most recent report of the administrative office of the U.S. courts reveals the broad range of civil litigation in which the United States is a party. In fiscal year 1978, 46,811 civil cases were commenced in the federal district courts in which the United States was

a party. The subject matter of these cases varied widely: 79% of them involved only six categories of cases: Real property actions (*including land condemnation proceedings*) (23%), social security matters (21%), prisoner petitions (12%), contract disputes (11%), tax cases (6%), or tort actions (6%). The remaining case load included forfeitures and penalty actions (6%), labor matters (4%), civil rights (3%), environment cases (1%), and anti-trust cases (.09%). By excluding tax and tort cases, S.265 would affect 88% of this case load.... Without a sophisticated study, it can only be assumed that the distribution of cases lost by the government is proportionate to the distribution of total cases. *Thus, the impact of award of attorney's fees* under the S. 265 approach *would affect all areas of government business* —from enforcement of civil rights *to land-condemnation,* from management of federal institutions to procuring government contracts.

*Equal Access to Justice: Hearings on S. 265 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary,* 96th Cong., 1st Sess. 50, 51 (1979) (emphasis added).

*never* applies to eminent domain cases, as held by the panel.

The panel opinion also expressed concern that awarding of attorneys' fees in condemnation cases under § 2412 would conflict with prior court interpretations of the pre-Act § 2412, now § 2412(a). This provision permits award of *costs* to be made against the United States, while § 2412(d) provides for attorneys' fees in addition to costs. The panel asserts that because the pre-Act § 2412 did not apply to condemnation cases, the identical language of § 2412(a) does not apply either, so that it would be anomalous to permit fee awards, but not cost awards. 678 F.2d at 22–23.

In noting that the pre-1980 version of § 2412 had been held not to apply to condemnation cases, the Supreme Court in *Bodcaw, supra,* 440 U.S. at 204 n. 3, 99 S.Ct. at 1067 n. 3, cited *United States ex rel. TVA v. An Easement,* 452 F.2d 729 (6th Cir.1971). *See* note 7 *supra.* There, the Sixth Circuit had based its holding primarily upon the legislative reports and legislative history surrounding the *1966* revision of § 2412. 452 F.2d at 730–31. The preferable view may well be that—in the light of the *1980* legislative reports and of § 2412(a)'s new statutory context, *see, e.g.,* § 2412(b) (1980) [12],—§ 2412's coverage was expanded to apply to eminent domain cases by its 1980 re-enactment as part of the Equal Access to Justice Act, although re-enacted without substantial change in wording as § 2412(a). We need not decide this issue, however, because the landowner does not complain of the denial of costs on his application for en banc rehearing, perhaps because the litigation expenses that he may be entitled to recover under § 2412(d) are his principal out-of-pocket litigation expenses.

Should we for purposes of argument accept the government's contention that the 1980 revision of § 2412 was not intended to affect its non-application to eminent domain cases (with their special history and problems in the allocation of costs, *see TVA, supra,* 452 F.2d at 730; Fed.R.Civ.P. 71A(*l*) (1951 and advisory committee notes); 15 Wright and Miller, Federal Practice and Procedure, § 3056), nevertheless, Congress has by § 2412(d) clearly expressed its intention that attorneys' fees and litigation expenses may be imposed upon the government in favor of a private prevailing party where they are caused by the government's unreasonableness in litigation. If there is an anomaly in the matter of *court costs,* either intentional or through inadvertence, the anomaly was created by Congress. Such anomaly, if indeed it is one, does not justify our failure as a court to ignore Congress' plainly expressed intention that *attorneys' fees* and *litigation expenses* may be awarded in condemnation cases unreasonably litigated by the government.

## B. *Prevailing Party Argument*

The government contends that the landowner is not a "prevailing party" for purposes of fee awards under 42 U.S.C. § 2412(d) because the United States, not the landowner, prevailed in the action to acquire the real property. The landowner asserts that it has prevailed when proceedings establishing the value of the condemned land result in an award greater than that of the government's offer.

The Equal Access to Justice Act does not define "prevailing party," but the Senate and House reports discussing the Act proposed that the term is to be consistent with the body of case law that has developed under existing fee-shifting stat-

---

**12.** 28 U.S.C. § 2412(b) (1980) provides:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

utes.[13] In these committee reports explaining the legislative intent with regard to the private "prevailing party" entitled to attorneys' fees under § 2412(d), the Congress made it plain that for purposes of the Act the prevailing party was not limited to a "victor" by final judgment, but included parties prevailing by favorable settlement or by favorable decision on interim central issues, whether or not the party ultimately prevailed on all the issues. Whatever the test of "prevailing party" might be in other circumstances, for purposes of § 2412(d) it would clearly include a landowner who won by judgment or negotiation far more than the government had offered or admitted liability for in a condemnation case. As stated by the Third Circuit in somewhat different context:

> [I]f the issue is the government's right to take the property . . . and the government is successful in establishing that right, [it] could well be regarded the prevailing party. . . . But when, as here, the issue is the amount of just compensation to which the condemnee is entitled and where, as here also, the amount actually awarded by the court exceeds very substantially the amount of the government's original offer and deposits, it would seem not unreasonable to hold that the condemnee would be the prevailing party.

*Government of Virgin Islands v. 19.623 Acres of Land,* 602 F.2d 1130, 1135 (3d Cir.1979).[14] (Of course, although in such an instance the landowner may be the prevailing party, this is not determinative of the distinguishable issue of whether the government was or was not substantially justified in its position.)

### C. Conclusion

For the reasons noted, we find that 28 U.S.C. § 2412(d)(1)(A) applies to eminent domain cases as well as other non-tort civil cases.

### III.

The present landowner's motion for attorneys' fees and litigation expenses under 28 U.S.C. § 2412(d)(1)(A) is filed before us in atypical and perhaps non-recurring circumstances.

The Equal Access to Justice Act, Pub.Law 96–481, 94 Stat. 2325, became law on October 21, 1980. Section 208 of the Act provided that "it shall take effect on October 1, 1981, and shall apply to . . . any civil action or adversary adjudication described in section 2412 of title 28, United States Code, which is pending on, or commenced after such date." The district court judgment was entered and the appeal lodged in this court in 1980, before the effective date (Oct. 1, 1981) of the Act.

On September 29, 1981, the appellee landowner filed in this court a supplemental motion praying for the award of "his reasonable attorneys' fees and expenses *in de-*

---

**13.** The legislative reports accompanying the Act explain:

> Under existing fee-shifting statutes, the definition of prevailing party has been the subject of litigation. It is the committee's intention that the interpretation of the term in S. 265 be consistent with the law that has developed under existing statutes. Thus, the phrase "prevailing party" should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he obtains a favorable settlement of his case . . .; if the plaintiff has sought a voluntary dismissal of a groundless complaint, . . . on all issues. In cases that are litigated to conclusion, a party may be deemed "prevailing" for purposes of a fee award in a civil action prior to the losing party having exhausted its final appeal. A fee award may thus be appropriate where the party has prevailed on an interim order . . . which was central to the case, or where an interlocutory appeal is "sufficiently significant and discrete to be treated as a separate unit".

Sen.Rep. 96–253, *supra,* at 7; H.R.Rep. 96–1418, *supra,* at 11, *reprinted in* U.S.Code Cong. & Admin.News, p. 4990.

**14.** *19.623 Acres* is a pre-Act case decided under Virgin Islands condemnation law discussing the award of costs against the government of that territory. The court found that Fed.R.Civ.P. 71A(*l*) did not prevent award of costs to the landowner, because he is a "prevailing party" in the contest for greater compensation. The court then found that the Virgin Island government was liable for costs under its own statute. 602 F.2d at 1135.

*fending this appeal"*, basing this motion upon 28 U.S.C. § 2412, as amended, effective October 1, 1981. The landowner thus sought attorneys' fees only insofar as the government's *appeal* may not have been substantially justified, not because its position in the trial court was unreasonable.[15]

As we perceive the issues posed in this procedural context, we must decide (A) whether the Act affords a remedy for the government's taking a substantially *unjustified appeal* (assuming its defense in the trial court was substantially justified) and (B), if so, whether attorneys' fees and litigation expenses so awarded may be awarded upon proper showing by the appellate court itself, or whether instead the issue should be decided upon remand to the district court.

### A.  *§ 2412(d) Remedy for Government's Unjustified Appeal?*

The Act itself provides for a § 2412(d) award of attorneys' fees and litigation ex-

penses, upon proper showing, by "*any* court having jurisdiction of that [civil] action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (emphasis added) (quoted in full at note 6 *supra*). No argument is made nor authority cited that these statutory words do not mean what they seem to say—that *any* court with jurisdiction, including an appellate court with appellate jurisdiction, may award § 2412(d) litigation expenses upon a judicial finding that the United States' position in litigation before it was not substantially justified.[16]

While the legislative reports are silent as to the precise issue before us, we note that Senator Goldwater, a co-sponsor of the legislation, adverted in floor explanation of the bill to the litigation costs caused by the government's abuse of the appellate process,[17] as one of the justifications for requir-

---

**15.** Possibly the landowner felt that his entitlement to § 2412(d) relief for the government's trial unreasonableness was not as clear as his potential entitlement for appellate unreasonableness, because § 2412(d)(1)(B) provides that a party seeking § 2412(d) relief "shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses", and because there are divided views as to whether a private prevailing party is entitled to relief under § 2412(d) for trial services completed before the effective date of the Act, *see* Robertson and Fowler, *supra,* 56 Tul.L.Rev. at 943–44.

**16.** We were initially given some concern by the possible applicability of *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). There Court held that a claimant under the civil rights statutes could not obtain an award of attorneys' fees from the appellate court as a "prevailing party" simply because the claimant had secured reversal on appeal of directed verdicts and remand for a new trial. However, the basis for the disallowance of attorneys' fees under 42 U.S.C. § 1988 was that, from the legislative reports and history of that statute, "[i]t seems apparent from these passages that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the *merits* of at least some of his claims", 446 U.S. at 757–58, 100 S.Ct. at 1989. The Court continued: "The respondents have of course not prevailed on the merits of any of their claims. The Court of

Appeal held only that the respondents were entitled to a trial of their cause." 446 U.S. at 758, 100 S.Ct. at 1990.

That decision is not apposite to the issue before us. *Hanrahan* held only that under the legislative history of a different statute a claimant could not be regarded as a "prevailing party", and thus entitled ordinarily to attorneys' fees, simply because he prevailed on an appeal that resulted in a new trial without actually determining " 'the substantial rights of the parties' ", 446 U.S. at 1989, 100 S.Ct. at 1989. Here, a private party has prevailed on the merits and maintained affirmance of a district court judgment, despite the government's unsuccessful appeal. The present issue arises under a different statute, and concerns an entirely different statutory test—whether the government's position on appeal was "substantially justified", so that the government can escape a § 2412 award for attorneys' fees where the private litigant has prevailed upon the merits despite the government's unsuccessful (substantially justified or not?) appeal.

**17.** *See* 125 Cong.Rec. S10917 (daily ed. July 31, 1979) (Statement of Sen. Goldwater):

As high as these attorneys' fees may be at the trial level, a private citizen who wins his case there against the Government and then is forced to defend his judgment in an appellate court after the Government appeals, cannot be reimbursed even when that person succeeds a second time upon appeal. We

ing the government to reimburse a private litigant's cost of litigation when occasioned by governmental litigation efforts that were not substantially justified. The repeated thrust of the legislative reports and the debates was that the Act was designed to assure redress to private citizens for litigation costs, and their prolongation, that were occasioned by governmental unreasonableness. We see no reason why Congress did not intend by the Act that a private litigant be afforded a remedy for an appeal by the government upon insubstantial justification, as well as for his resisting unfavorable, or securing favorable, interlocutory or final rulings in the trial court.

### B. *Remand?*

In this case of first impression in this court under 28 U.S.C. § 2412(d)(1)(A), we have determined upon the present procedural posture of this atypical case to remand to the district court for (1) its determination whether the government's appeal in this case was substantially justified, so that attorney's fees and litigation expenses of the appeal need not be assessed against the government and (2) to fix the award for these litigation expenses, if the district court determines that the government is liable for such fees and expenses.

We do so for several reasons: A multi-membered en banc court is normally not the most appropriate tribunal to make a quasi-factual judgment of first instance that may depend on individual study by each judge of a particular record. While remand to the initial panel to decide the particularized issue might have been appropriate, in the present instance a remand to the district court will in any event be required to fix the rate of interest for post-trial judgment delay (*see* Part IV *infra*), so that a remand to the panel rather than to the district court will lengthen instead of shorten the delays before final termination of this litigation.

Finally, in this case of first impression, we do not wish without further experience of adjudicating issues raised by the Act to adopt an inflexible en banc rule for their determination on appeal, that will be binding on future panels until (if shown to be unwise in future experience) overruled by another en banc court.

■ The following additional comments, however, may not be inappropriate. The statutory scheme provided by § 2412(d) would permit an appellate court to find that the appeal before it was substantially unjustified, *see* subsection § 2412(d)(1)(A) quoted in note 6 *supra*, and provides the mechanism by which that appellate court could determine the issue and award litigation expenses allowable to the private litigant, *see* subsection § 2412(d)(1)(B) partially quoted in note 15 *supra*. In some, perhaps many, appeals, the appellate court deciding the appeal may most readily decide also whether the government's appeal was substantially justified, and the most efficient and expeditious method of deciding the issues may be for the appellate court itself to determine them and (if able to do so without remand as to amount at issue) also fix the litigation expenses to be awarded the private litigant if he is found entitled to them.

■ On the other hand, there may be instances where the district court, with the benefit of the appellate decision on the merits of the appeal, may be in a better position than the appellate court to evaluate the reasonableness of the government's appeal in the light of the trial court's prolonged exposure to the litigation in its entire evidentiary context. Further, the district court is in a better position than the appellate tribunal to evaluate whether the government's trial position was substantially justified, and rarely will the district court not be the appropriate tribunal to make at

---

can take this a step further and notice that should the Government, with all its resources, choose to appeal a second negative decision up to the Supreme Court, then the private party must once again bear the entire burden out of his own pocket in order to pay

the costs of counsel at this highest judicial level. Thus, a private individual or business could prevail three times in a case against the Government, and yet, never once could he recover the actual legal fees he has suffered to uphold his rights.

least the initial determination on the issue. Finally, there will be circumstances (such as those presented by the case), where the most appropriate method to secure expeditious final conclusion of the litigation will be to remand the issues to the district court for their initial determination.

Without further experience of deciding § 2412(d) issues as they arise, we do not wish at this time to settle upon any preferred methodology for all circumstances, nor do we wish to attempt to determine criteria that suggest which of several possible methodologies is most appropriate under varying circumstances.

### IV.

The final issue presented by landowner's application for an en banc rehearing, which was granted, concerns the panel's refusal to allow more than 6% interest on the award as post-trial judgment delay compensation. *See* note 2 *supra.* The landowner has sought this greater interest award by motion filed in this court on February 2, 1981, basing his claim upon the Fifth Amendment, as well as 28 U.S.C. § 1912, 28 U.S.C. § 1927, and Fed.R.App.P. 38. In denying interest, the panel simply stated that the landowner-appellee did not qualify for damages under the cited statutory and rule provisions, without referring to the Fifth Amendment issue. 678 F.2d at 24.

The government specifically did not brief or argue the interest issue before the en banc court. In its Supplemental Brief on Rehearing, filed August 9, 1982, the government noted that "the interest issue will not be addressed in this brief", since "the issue of interest has already been fully briefed and has been separately scheduled for argument" in a related appeal, *see* p. 4, n. 3 of brief (referring to the appeal from denial of a Rule 60(b) motion by the present landowner to secure *pre*-judgment interest).

This latter appeal has been decided subsequent to the argument on en banc rehearing. *United States v. 329.73 Acres of Land,* 695 F.2d 922 (5th Cir.1983) (pre-trial judgment interest in excess of 6% denied as not timely sought).

In the government's brief in that case, while it resisted the allowance of pre-trial interest in excess of 6% as not timely sought, it admitted the controlling jurisprudential determinations that the Fifth Amendment not only mandates that a landowner be awarded just compensation represented by the fair market value of the property on the date taken, but also that ·" 'just compensation' in the constitutional sense has been held ... to be fair market value at the time of taking plus 'interest' from that date to the date of payment." *Albrecht v. United States,* 329 U.S. 599, 602, 67 S.Ct. 606, 608, 91 L.Ed. 532 (1947).[18]

We agree with the decisions of other federal appellate courts that the 6% delay damages provided by the Declaration of Taking Act, 42 U.S.C. § 258a, and by other federal condemnation statutes, sets a floor, rather than a ceiling, on the rate of interest payable on the deficiency. *See United States v. 429.59 Acres of Land,* 612 F.2d 459, 464–65 (9th Cir.1980); *see also Miller v. United States,* 620 F.2d 812, 837 (Ct.Cl. 1980); *United States v. Blankinship,* 543 F.2d 1272, 1276 (9th Cir.1976). We do not attempt at this time to set forth a formula for the calculation of a delay-compensating interest rate for the period of the appeal; instead we remand this fact-specific determination to the district court for its hearing and decision thereupon.

### Conclusion

Accordingly, we have vacated the panel's denial of motions filed in this court by the appellee landowner praying for the award

---

**18.** *See* p. 11, government brief in the companion Rule 6(b) case, reported at 695 F.2d 922, cited in text (our docket no. 78–4345). The 6% interest awarded was based upon the provision in the Declaration of Taking Act, 40 U.S.C. § 258a, which provides for interest at the rate of 6 per centum per annum as part of the just compensation. In the companion appeal, the government's brief abandoned the position that this was the maximum interest awardable for delay, p. 11, citing uniform decisions from other circuits to the contrary (that we cite in the text below).

of attorneys' fees and litigation expenses under 28 U.S.C. § 2412(d) (1980), and for the award of more than 6% per annum interest as post-trial judgment delay compensation. We remand this case to the district court, for further proceedings consistent with the views above expressed, (1) to determine the proper rate of interest allowable as post-trial judgment delay damages, and (2) for its consideration of the motion for attorneys' fees and litigation expenses under the cited statute, in order that it may determine whether the government's appeal was substantially justified under the facts and issues in this case, as well as for it to fix the award for attorneys' fees and litigation expenses if the court determines that the United States is liable for such fees and expenses under § 2412(d).

CASE REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS.

ALVIN B. RUBIN, Circuit Judge, with whom GEE and PATRICK E. HIGGINBOTHAM, Circuit Judges, join, dissenting:

Read as a whole, the majority opinion says, in magisterial sweep: "Congress intended the government to pay. Let its will be done." But Congress simply did not issue such a pervasive ukase. The majority holds that a landowner who receives an award only slightly more than the government's condemnation offer is the prevailing party even if the landowner's final demand was ten times greater than the amount of the award. It holds that a party who did not prevail below is entitled to collect from the government attorneys' fees incurred on appeal if the appeal is determined not to be "substantially justified" even though the appeal is not frivolous and, therefore, other private litigants could not collect fees incurred in defending against it. It sweeps on to suggest in dicta that the government may be taxed for fees incurred either in opposing a government motion or in overcoming government resistance on interlocutory matters, including discovery, even if

the private party does not prevail in the lawsuit, and, with munificent hand, extends this recompense not only to suitors in condemnation cases but to private participants in all civil cases in which the federal government is a litigant. The majority finds all of this ordained by reading one statute as if it stood in splendid isolation from the body of condemnation law. By this interpretation, the EAJA alters radically the position of both the sovereign and the private litigant in condemnation matters. I do not think that either the explicit command of the statute or the congressional intent in enacting it suggest that we thus give a litigant whose land the government successfully condemns rights greater than that litigant would have against a private party. I, therefore, respectfully dissent from all of the opinion save part IV concerning interest on the judgment.

The question actually before the court is a narrow one: may a landowner, whose property has been condemned by the United States, recover attorneys' fees under the Equal Access to Justice Act (EAJA)[1] if the government unsuccessfully appeals the amount awarded as just compensation? I differ with the majority's sweeping answer for three basic reasons. First, I cannot agree that the statute permits a fee award for winning points unless the private party prevails in the entire lawsuit. Second, I cannot agree with the holding that any landowner who is awarded anything more than the government deposits is the prevailing party. Third, I cannot agree with the court's application of the EAJA to condemnation cases. I also differ with the majority concerning whether the case should be remanded to the district court and with various dicta in the opinion for reasons that I state as I comment on those expressions.

I.

The relevant portion of the EAJA states:

1. 28 U.S.C.A. § 2412 (West Supp.1982). The landowner in this case does not argue that he is entitled to attorneys' fees for trial of the condemnation case, and does not suggest that he

"prevailed" in the district court. He contends only that he is entitled to recover fees under the EAJA for successfully resisting the government's appeal.

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a),[2] incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C.A. § 2412(d)(1)(A) (West Supp. 1982).

. The statute thereafter fixes the procedure for recovery. *Id.* § 2412(d)(1)(B). It requires the party seeking the award to file an application thirty days *after the judgment becomes final* "which shows that *the party is a prevailing party* and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney ... representing ... the party ...." *Id.* In describing the "fees and other expenses" recoverable, the statute includes "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees." *Id.* § 2412(d)(2)(A).

The statute contemplates, like other statutes authorizing attorneys' fees, that fees will be awarded for the entire case, including trial and appeal. It contains no intimation that a litigant who does not prevail in the final judgment has a claim for attorneys' fees based solely on defending against an appeal that sought an even more favorable result for the party who had already succeeded in the trial court and who would still be the prevailing party in the final judgment.

The legislative history indicates that the EAJA is to be interpreted consistently with other fee-shifting statutes. *E.g.,* S.Rep. No. 253, 96th Cong., 1st Sess. 7 (1979); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11 (1980). The term "prevailing party" means a party who wins final victory, not a single round.[3] Thus in *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam), the Supreme Court held that the plaintiffs did not achieve prevailing party status by gaining reversal on appeal of the district court's directed verdict against them. Therefore, the plaintiffs were not entitled to fees for the appeal under the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. § 1988 (Supp. III 1979), even though they gained a reversal of the trial court's adverse ruling. *Id.* at 759, 100 S.Ct. at 1990, 64 L.Ed.2d at 675.[4]

The debate on passage of the EAJA suggests that legislators thought that fees should be awarded for services rendered in connection with an appeal only when the private litigant had won in the district court or agency and maintained that victory on appeal or when the private litigant had lost his case below, secured reversal on appeal, and then was awarded judgment. *See* 125 Cong.Rec. S10,917 (daily ed. July 31, 1979) (remarks of Sen. Goldwater) (private citizen who "*wins his case [at trial] and is*

---

**2.** Subsection (a) permits an award of costs to the prevailing party in any civil action brought by or against the United States. Such a judgment is permitted "[e]xcept as otherwise specifically provided by statute ...." and is limited to "reimbursing ... the prevailing party for the costs incurred ...." *Id.* § 2412(a).

**3.** Suppose the plaintiff in a civil rights action obtains a judgment of $10,000 and then appeals, seeking an increase in the award. The judgment below is affirmed on appeal. Unless the appeal is frivolous, and costs and damages are allowed under Fed.R.App.P. 38, the defendant-appellee would not, I submit, be allowed

attorneys' fees for defending the appeal. The plaintiff would still be the prevailing party, although the victory would not be as great as was desired.

**4.** *See NLRB v. Doral Building Services, Inc.,* 680 F.2d 647 (9th Cir.1982) (per curiam) (*Hanrahan* definition of prevailing party applies to EAJA); *Lipscomb v. Wise,* 643 F.2d 319, 323 (5th Cir.1981) (per curiam) (success in result determines entitlement to fees); *Davis v. City of Ennis,* 520 F.Supp. 262 (N.D.Tex.1981) (3-judge court) (same).

*then forced to defend his judgment in an appellate court* after the Government appeals ...." should receive fees); *see also* 126 Cong.Rec. H10,230 (daily ed. Oct. 1, 1980) (remarks of Rep. Schutze) ("Should the Federal Government use its right of appeal all the way to the Supreme Court, *a private party could prevail three times* yet never recover costly attorneys' fees necessary to uphold his rights" under then-current law) (emphasis added).

Of course, litigants who prevail in the district court and repeat their success on appeal may receive fees for all of their attorneys' work, including the appeal, under any of the fee-shifting statutes authorizing awards against governmental entities, *e.g.,* 42 U.S.C. § 1988 (Supp. III 1979), or against private parties. *E.g., id.* § 2000e-5(k) (1976). Similarly, a private litigant who loses to the government at trial and gains an outright reversal on the merits on appeal is entitled to fees; that person, having prevailed at judgment, should recover fees for both the appeal and the trial. But today's case presents neither of those situations.

This case is more akin to a suit between private litigants in which a party who lost in the district court seeks damages and costs for preventing an even greater loss on appeal. Private litigants can gain such an award only if the court characterizes the appeal as frivolous, in which case it may award damages and single or double costs to the party who is successful on appeal without regard to whether that party prevailed in the court below. *See* Fed.R. App.P. 38; 28 U.S.C. § 1912 (1976).[5]

The majority interprets the statute to permit fees for success on appeal only, creating a set of remedial provisions unique to the EAJA for litigants who lose their case in the trial court but successfully resist a government appeal. This holding gives private litigants greater rights against the

government than they would have against another private litigant. The legislative history of the EAJA makes clear that the Act was intended to do no more than even the score between private litigants and the government. The majority's interpretation instead changes the rules.

Indeed, the majority states that under the EAJA a private party who loses the case but "prevails" on an interlocutory issue is entitled to fees incurred on that issue.[6] I do not think that Congress intended to slice litigation so thin and into so many parts and then, after the julienne, to allow a litigant against the government a fee if he achieves interlocutory success in any part. *See Hanrahan,* 446 U.S. at 757, 100 S.Ct. at 1989, 64 L.Ed.2d at 674 (interlocutory fee award available only when party has established liability of opponent).

The statute evinces no congressional intent *either* to allow a party who did not prevail at trial to recover for only successfully resisting an appeal *or* to allow any party to recover more from the United States than could be recovered from a private litigant under the same circumstances. *See* 125 Cong.Rec. S10,915 (daily ed. July 31, 1979) (remarks of Sen. Stevens) ("The Court will be able, in its discretion, to award legal fees to the prevailing party in an action against the government, *just as it is now able to award such fees in cases involving private parties.*") (emphasis added). Allowing the landowner to recover here extends the general rule governing appellate fee awards in both directions against the government only.

II.

The majority holds that, even if the government succeeds in acquiring the land it seeks, the landowner is the prevailing party if he obtains an award greater than

---

5. Whether *damages and costs* for a frivolous appeal can be awarded against the United States has, so far as I can find, not been decided. Judgment on that question should, however, be reserved until the issue is presented.

6. "We see no reason why Congress did not intend by the Act that a private litigant be afforded a remedy for an appeal by the government upon insubstantial justification, as well as for his resisting unfavorable, or securing favorable, interlocutory or final rulings in the trial court." At 810.

the government's offer.[7] This does not take into account either the intent Congress has expressed in other legislation or the real nature of condemnation proceedings. Congress has expressed the opinion that the landowner does not prevail when the government acquires the land, for in 1971 it enacted a statute dealing with costs and fees in condemnation suits in which the United States either does not acquire the land or abandons the proceeding. *See* 42 U.S.C. § 4654 (1976). This suggests that Congress considered the government the victor when it succeeds in obtaining the property.

The congressional intimation accords with the nature of condemnation litigation. The objective of the exercise of the power of eminent domain is to secure property for public use. Unless the government loses or abandons the condemnation suit—situations provided for in § 4654—it will be the "prevailing party." *See United States v. 341.45 Acres of Land,* 542 F.Supp. 482 (D.Minn. 1982); *United States v. 101.80 Acres of Land,* 92 F.R.D. 774 (D.Idaho 1982), *appeal pending,* No. 82–3046 (9th Cir. argued Dec. 8, 1982). This is because the government got what it sought—the land—even though it had to pay a higher price than it originally offered. *See also* Advisory Committee on Federal Rules of Civil Procedure, Comment to Fed.R.Civ.P. 71A ("[T]he condemnor will normally be the prevailing party . . . .") (quoted in full *infra* at 817).

The majority holds, in effect, that the prevailing party requirement is satisfied in condemnation cases if the landowner recovers more than the government deposits with the district court. Focusing only on whether the award exceeds the government's offer ignores the entire background of condemnation. Before the United States can institute condemnation proceedings it must appraise the land and negotiate with the landowner. *See* 42 U.S.C. § 4651 (1976). If we engage in the kind of economic rationalization on which the majority opinion apparently rests, weighing only the award against the offer, it would be equally plausible to say that, if the final award is one dollar less than the *landowner's* final counter-offer, the government has prevailed.[8]

In short, the court rejects the long-standing rule that the government prevails in condemnation cases in which it secures the land and adopts a new rule that in effect means that the landowner prevails if he convinces the trier of fact that the government's offer was $1.00 less than the ultimately determined fair market value of the property. I do not understand how the passage of the EAJA so radically altered the law of eminent domain.

### III.

Let us turn now to a separate question: apart from its availability only to the prevailing party, does the EAJA apply to con-

**7.** Of course, the majority does not say exactly that: it says that the "test of a 'prevailing party' . . . would *clearly include* a landowner who won by judgment or negotiation far more than the government had offered or admitted liability for . . . ." At 809 (emphasis added). This does not tell us whether the majority thinks a party prevails *only* if he obtains "far more" or how much more is "far more." It also does not tell us the relationship of the "far more" test to "substantial justification."

The majority may mean that any landowner who gets "more" prevails. That, in fact, seems to be the rationale of its opinion. If it is not, I cannot see how, by the majority's logic, there is any principled way of determining who prevails from the relative size of the award so that a landowner who is awarded $100,000 more than the government offers "prevails" but one who gets $1 more does not "prevail." To "prevail"

means "to gain ascendancy" or, in the vernacular, "to win." To say that the landowner "wins" if he gets a lot more than the government offered but not if he gets a little bit more seems to me to ignore the difference between determining who is the prevailing party on the one hand and whether there is substantial justification for the government's position on the other.

**8.** *See, e.g., United States v. 6,162.78 Acres of Land,* 680 F.2d 396 (5th Cir.1982). The government's highest appraisal was $1,891,173 and it offered this amount. The landowner's lowest appraisal was $3,052,193. The jury awarded $2,071,973. The award was, therefore, $180,000 more than the government's offer but almost $1,000,000 below the landowner's lowest figure. The government saved the taxpayers $980,220. Who prevailed?

demnation cases? Of course, if the government is the prevailing party, as I have suggested it should be, this question is moot. But if we assume that the majority is correct in holding that the landowner prevails and reach this issue, we must take account of other legislation specifically dealing with condemnation. Indeed, the EAJA commands us to do so for it applies only "except as otherwise specifically provided by statute" and Section 6 of the statute, the "saving clause," states:

> Nothing in [this statute] . . . alters, modifies, repeals, invalidates, or supersedes any other provision of State or Federal law which authorizes an award of such fees and other expenses to any party, other than the United States, who prevails in any civil action brought by or against the United States.

The Act of Jan. 2, 1971, Pub.L. No. 91–646, 84 Stat. 1906 (codified at 42 U.S.C. § 4654 (1976)), permits a property owner made defendant in a condemnation case to be reimbursed for "costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees . . . if (1) the final judgment is that the Federal agency cannot acquire the property by condemnation; or (2) the proceeding is abandoned by the United States."

Section 2412(d)(1)(A) allows fees and other expenses "*in addition to any costs* awarded pursuant to subsection (a) . . . ." (emphasis added). *See supra* note 2 & accompanying text. This implies that Congress intended to award fees only to a litigant who is permitted to recover costs.[9] The right to costs is governed generally by Fed. R.Civ.P. 54(d), which states:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States . . . shall be imposed only to the extent permitted by law.

In land condemnation cases, however, Fed. R.Civ.P. 71A(*l*) states simply: "Costs are not subject to Rule 54(d)."

The Advisory Committee explained the need for Rule 71A(*l*) by stating: "*Since the condemnor will normally be the prevailing party and since he should not recover his costs against the property owner,* Rule 54(d) . . . is made inapplicable." (emphasis added). The Committee continued: "Costs may not be taxed against the United States except to the extent permitted by law. Even if it were thought desirable to allow the property owner's costs to be taxed against the United States, this is a matter for legislation and not court rule." Notes of Advisory Committee on Rules (following Fed.R.Civ.P. 71A) (citation omitted). Nothing in the subsequently enacted § 4654 changes the rule that, if the government acquires the land, it may not be taxed for costs, although, reaching out, the majority suggests that the EAJA repealed Rule 71A(*l*) and altered completely the meaning of § 4564.

The relevant EAJA provisions allow costs and fees "[e]xcept as otherwise specifically provided by statute . . . ." Because § 4654 specifically provides for costs and fees against the government in condemnation cases *only* when it abandons the proceeding or does not succeed in acquiring the land sought, §§ 2412(a) and (d) are not applicable. The majority holds that the EAJA does more than merely supplement § 4654; the court holds that it virtually repeals the statute. This is particularly odd in view of Congress' express declaration that the EAJA does not alter, modify, or repeal any provision authorizing an award of fees and other expenses against the United States.

The majority interprets § 2412(a) as though the words "expressly provided" have no meaning. Yet when Congress intended to allow fees and costs to be taxed against the government unless an existing

---

**9.** I do not read the adjective "any" in the term "any costs" to imply that the award of costs under subsection (a) is discretionary or that sometimes attorneys' fees may be awarded even if no costs are due. The statute does not read "costs, if any." Its phrasing implies a general reference, *e.g.,* those costs awarded pursuant to subsection (a).

statute *prohibited* such an award, it said so in plain terms: Section 2412(b) of the EAJA allows fees "[u]nless expressly prohibited by statute . . . ." Section 2412(a), which we are interpreting, does not include this clear language.

The legislative history furnishes little guide to the statute's applicability to condemnation cases. The majority cites broad statements of intention and the testimony of various witnesses before the Senate Judiciary Subcommittee on Improvements in Judicial Machinery about the burden on the government if the proposed bill, S. 265, applied to condemnation cases. It is a fair interpretation of this testimony that the Department of Justice understood that S. 265 would allow such awards. *See Equal Access to Justice Act of 1979: Hearings on S. 265 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary,* 96th Cong., 1st Sess. 50, 51, 56 (1979) (statement of Raymond S. Calamoro & W.R. King, Department of Justice).

*After* the hearings were completed, however, the Senate Judiciary committee added the "saving clause" (§ 6) to the EAJA. *See supra,* at 817. While the Justice Department continued to oppose the legislation on the ground that it would increase the cost of condemnation, *see* at 806 n. 11, the Committee report itself contains no explanation for the addition of this clause. There are two statements in debate possibly referring to the saving clause. Senator Kennedy, after noting that "until now, . . . attorneys' fees have only been authorized in law suits brought under particular statutes . . .," stated:

This legislation would authorize attorneys fees in agency proceedings or court suits not now covered by a fee provision in a specific statute.

. . . .

In addition, the report makes clear that the $75 cap does not apply to the determination of fees under other specific statutes which are designed to promote the private enforcement of the policy involved in that statute, such as the civil

rights law. In those cases, the concept of a fee cap would not be appropriate.

In general, statutes, such as the Freedom of Information Act and civil rights laws, which contain special fee-shifting provisions remain unaffected by this measure, even if the standard for awarding fees under the statute has evolved through case law and is not set out in the statute itself.

125 Cong.Rec. S10,923–24 (daily ed. July 31, 1979).

Representative Kastenmeier stated:

I would like to emphasize that this bill does not alter the standards and methods of determining attorneys' fees under existing law, wherein attorneys' fees can be awarded. For example, the $75 general ceiling in the bill for the attorneys' fees should not be considered a maximum in other existing attorney fee statutes, such as those under civil rights laws. Important public policies are served by the private enforcement of such laws, and reimbursement is not the main issue. Courts have considered other factors in those cases, and should continue to do so.

126 Cong.Rec. H10,223 (daily ed. Oct. 1, 1980).

The majority reads this additional clause as merely protecting the rights of civil rights litigants. I do not think it is so restricted. The congressional committee, after hearing testimony from the administration about the potential financial impact of the EAJA—including its application to condemnation cases—considered it necessary to add the clause. This indicates an intention not to trespass on territory covered by all other statutes, not merely civil rights laws. Section 4654 covers the condemnation territory.

The Senate Bill, S.265, was passed by the Senate on July 31, 1979. When S.265 was considered by the House Subcommittee, it contained the saving clause. The witness who appeared for the Justice Department at the hearings before that subcommittee, held in May and June 1980, did not refer to condemnation cases in her testimony. However, the letter quoted by the majority

in footnote 11 does appear in the documents collected as part of the legislative history. It is dated October 17, 1979, and was, therefore, written after adoption of the saving clause.

Therefore, the statute, read as a whole, in the light of its legislative history, cannot be said to preclude the interpretation placed on it by the majority. But in interpreting a statute such as the EAJA, we cannot take one sentence, one section, or even the entire statute alone and say that it has a "plain meaning" as if there were an objective formula in the few words simply waiting to be grasped by the courts. Instead the statute must be read as a whole, taking all of its provisions and reading them in the context of the legal fabric to which they are to be applied. An interpretation that creates an admittedly anomalous result is not salved by the majority's apologia that, if *we* read the statute in that fashion, *Congress* created the anomaly. Instead the question is whether the statute read as a whole was intended by Congress to create such results. The law is not an isolated bundle of capricious and inconsistent commands by a legislature presumed to react mindlessly. The question is whether the EAJA applies to those condemnation cases in which the government acquires the land it seeks and in which, according to my understanding, the government is the prevailing party. It seems to me that the answer to that inquiry is that the statute does not.

### IV.

In any event, the remand to the district court cannot be justified. If the government's appeal (not its position at trial) was without substantial justification, who is better prepared to determine that than we? How can the district court divine the state of the appellate mind? Why should we ask it to do so? If the landowner is entitled to fees, we ought to say so, or, at the very least, remand to the panel that heard the appeal on the merits.[10]

For all of these reasons, I would reinstate the panel's judgment save for its denial of interest.

REAVLEY, Circuit Judge, with whom RANDALL and GARWOOD, Circuit Judges, join, dissenting:

I agree with the majority holding that a condemnee may obtain his attorney fees under the Equal Access to Justice Act if the position of the government was not substantially justified and the condemnee is the prevailing party, i.e., if he recovers by the lawsuit compensation for the condemned interest in land greater than the amount which was offered or deposited by the government. The earlier statute, 42 U.S.C. § 4654, does not specifically provide otherwise. I find no inconsistency between the two statutes. The earlier statute authorizes cost reimbursement if the United States abandons the proceeding, which initiation and discontinuation may or may not be substantially justified, or if the government is denied the acquisition by final judgment (which, again, may or may not have been after substantially justified decisions on part of the government).

Nevertheless, I agree with Part I of Judge Rubin's dissent. The condemnee must prevail on the entire lawsuit to be entitled to attorney fees under my reading of the Equal Access to Justice Act. The landowner here has only sought fees for successfully resisting the government's appeal. Finding no statutory basis for that award, I would deny it.

---

**10.** Every other case involving the question whether the government's position was "substantially justified" on appeal has been decided by the appellate court. *See Wyandotte Savings Bank v. NLRB,* 682 F.2d 119 (6th Cir.1982) (per curiam); *S & H Riggers & Erectors, Inc. v. OSHRC,* 672 F.2d 426 (5th Cir.1982); *United States v. Citizens State Bank,* 668 F.2d 444 (8th Cir.1982).