**JACOBS EQUIPMENT CO.,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 76–1683.**

United States Court of Appeals,
Tenth Circuit.

April 24, 1978.

Douglas M. Cain, Denver, Colo. (Stephen P. Kregstein of Dawson, Nagel, Sherman & Howard, Denver, Colo., and George D. Webster of Webster, Kilcullen & Chamberlain, Washington, D.C., on brief), for plaintiff-appellee.

Robert A. Bernstein, Washington, D.C. (Gilbert E. Andrews and Richard W. Perkins, Attys., Tax Div., and Scott P. Crampton, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., of counsel; James L. Treece, U. S. Atty., Denver, Colo., on brief), for defendant-appellant.

Before McWILLIAMS and DOYLE, Circuit Judges, and ROGERS, District Judge.*

McWILLIAMS, Circuit Judge.

The question to be resolved in this appeal is whether the act of welding a hoist to a truck body constitutes the "manufacture" of a truck body within the meaning of 26 U.S.C. § 4061(a)(1). The trial court held that such did not, and we agree with that conclusion.

Jacobs Equipment Co., the taxpayer, hereinafter referred to as Jacobs, brought this suit to obtain a refund of excise taxes and penalties in the aggregate amount of $10,117.72. The parties stipulated to an agreed statement of facts. Jacobs then filed a motion for summary judgment. The

* Of the United States District Court for the District of Kansas, sitting by designation.

United States, the defendant, filed a cross motion for summary judgment. The case was submitted to the trial court for final determination on this basis. The trial court entered its findings and conclusions, and held, *inter alia*, that the process whereby the taxpayer combined a hoist and a truck body was too minor to constitute an act of manufacture, thereby rendering 26 U.S.C. § 4061(a)(1) inapplicable. The trial court also held, alternatively, that the regulation authorizing the tax, Rev.Rul. 69–195, was invalid because it created a "substantial imbalance" between the sale of products by so-called "single-line manufacturers" and "dual-line manufacturers."

From the trial court's findings, which were based on the agreed statement of facts, we learn the following: Jacobs is a wholesale distributor of truck bodies and hoists. The majority of Jacobs' sales are at wholesale to retail dealers. However, Jacobs does make some sales of hoists and truck bodies at retail, i. e., to the ultimate customer. It is Jacobs' sale of hoists and truck bodies, at retail, and the services rendered by Jacobs in connection with such sales, that is the root of the present controversy.

Jacobs purchases hoists and truck bodies from a number of different manufacturers. Some manufacturers make both hoists and truck bodies and are referred to as "dual-line manufacturers." Other manufacturers from whom Jacobs also makes purchases, manufacture only hoists, or truck bodies, but not both. They are referred to as "single-line manufacturers." The hoists and truck bodies, whether purchased from a double-line manufacturer or a single-line manufacturer, are essentially interchangeable in use.

When Jacobs sells a hoist and a truck body to an ultimate customer, it is for use on a truck chassis which is furnished by the customer. Jacobs first installs the hoist on the truck chassis. This is a somewhat involved operation, and requires approximately 15 hours of labor. Once the hoist has been installed on the truck chassis, the truck body is attached to the hoist. This

process consists of lowering the truck body into place, raising the truck body by means of an overhead hoist or by cylinders of the hoist and welding its run sills (two rails running the length of the body underside) to the vertical plates of the hoist tail hinge assembly and to the upper mount of the hoist frame. This attaching of the hoist and the truck body, which, aside from the wiring of the body lights, constitutes the total process involved in attaching the body to the chassis, was characterized by the trial court as a fairly trivial operation normally requiring only one to two hours of labor. In a demonstration performed for the benefit of counsel, the operation was completed in three-quarters of an hour. It is the attachment of the hoist to the truck body which is at issue here, and the ultimate question is whether the act of attaching the hoist to the truck body constitutes the "manufacture" of a truck body. If it does, then the taxpayer is subject to the imposition of the tax provided for in 26 U.S.C. § 4061(a)(1). If it does not constitute such a manufacture, then 26 U.S.C. § 4061(a)(1) is inapplicable.

26 U.S.C. § 4061(a)(1) imposes an excise tax on the sale of truck chassis and truck bodies by a manufacturer, producer or importer in the amount of 10% of the sale price. A like tax is also imposed on the sale of all parts and accessories (which would include a hoist) if sold in connection with the sale of either a truck chassis or truck body. Another section imposes a tax of 8% on the sale of the same parts and accessories when they are sold separately, i. e., *not* in connection with the sale of either a truck body or chassis.

■ Although the incidence of the tax falls on the manufacturer, producer or importer, the taxable event is the first sale of the manufactured article. *Indian Motorcycle Co. v. United States*, 283 U.S. 570, 51 S.Ct. 601, 75 L.Ed. 1277 (1931). Hence, the tax base is the price at which the taxable article is sold by the manufacturer. One who purchases a manufactured article, and uses it in a manner which constitutes further manufacturing, thereby himself be-

comes a manufacturer subject to the same manufacturer's tax. *Magnesium Casting Co. v. United States*, 323 F.2d 952 (1st Cir. 1963). However, a credit is allowed to such subsequent manufacturer in the amount of the tax paid by the "first" manufacturer.

■ As above stated, Jacobs purchased dump truck bodies and hoists and assembled them on truck chassis belonging to its customers. On the theory that this process of assembly constituted "manufacturing," the Internal Revenue Service assessed a 10% tax on the price charged by Jacobs, giving a credit for taxes previously paid by the original manufacturers of the hoists and truck bodies, i. e., 10% on truck bodies and 8% on sale of hoists not made in connection with the sale of a truck body.

The trial court held that the tax was improperly imposed on two grounds: (1) the process of attaching the hoist to the truck body did not constitute an act of manufacturing; and (2) the tax as proposed by the Internal Revenue Service creates an "imbalance" which is contrary to legislative intent.

In imposing the tax on Jacobs, the United States relied on Rev.Rul. 69–195, which provided, in part, that the combining or assembling of a dump truck hoist with a dump truck body is a further manufacture of the dump truck body and under 26 U.S.C. § 4061(a)(1) is subject to the manufacturer's tax on the sale of a manufactured body.** Prior regulations had taken an opposite position on the matter, so this is an instance where down through the years the United States has on several occasions changed its position as to applicability of 26 U.S.C. § 4061(a)(1) to one who attaches a hoist to a truck body. Congress has recently stepped in and resolved the matter once and for all. Section 2109 of the Tax Reform Act of 1976 has abolished the tax imposed by Rev.Rul. 69–195. The present case arose, however, prior to the 1976 Act, so the question remains as to whether Rev.Rul. 69–195 is in accord with 26 U.S.C. § 4061(a)(1). In this general connection we reject the suggestion that by its enactment of the Tax Reform Act of 1976, Congress recognized the prior lawfulness of Rev.Rul. 69–195. All Congress did, in our view, was recognize the existence of the regulation.

Our study of the matter leads us to conclude, as did the trial court, that the act of Jacobs in attaching the hoist to the truck body does not constitute an act of manufacturing within 26 U.S.C. § 4061(a)(1). No part of the truck body is cut, stretched, or modified in any way. The hoist is merely physically attached to the truck body by welding which can be performed in three-quarters of an hour. We agree with the trial court that such does not rise to the dignity of manufacturing.

In support of our conclusion, see *United States v. Gamble-Skogmo*, 91 F.2d 372 (8th Cir. 1937) and *Thurman v. Swisshelm*, 36 F.2d 350 (7th Cir. 1929). In *Swisshelm* the taxpayer bought complete cars from Ford Motor Company. He also bought from another company automobile bodies that were so constructed as to fit upon the Ford chassis. The taxpayer would then remove the Ford body from the Ford chassis and substitute the other body. The substitution process was described as a simple one wherein only six bolts needed to be removed to detach the Ford body. The substitute body was then attached to the Ford chassis by inserting six bolts. There the act of removing the Ford body and substituting a different body was held not to rise to the dignity of "manufacturing."

*Gamble-Skogmo* held that the act of placing a freezing unit into a cabinet refrigerator and fastening the freezing unit into the refrigerator through the use of screws did not constitute manufacturing.

In the instant case, as in *Swisshelm* and in *Gamble-Skogmo*, all that is involved is

---

** Other regulations provided that if the taxpayer purchased the hoist and truck body at the same time from a dual-line manufacturer, no tax was due, and that the tax was only due when the taxpayer purchased the hoist and truck body from a single-line manufacturer, and then sold the hoist and truck body to the ultimate consumer and installed the hoist and body on a truck chassis furnished by the customer.

physically attaching one object to another. In *Swisshelm* and *Gamble-Skogmo*, the attachment was accomplished through the use of bolts or screws. In the instant case the attachment is by welding. The difference in technique in accomplishing the attachment in *Swisshelm* and *Gamble-Skogmo*, and that used in the instant case is in our view not significant.

The cases relied on by the United States are in our view distinguishable. For example, *Magnesium Casting Co. v. United States*, 323 F.2d 952 (1st Cir. 1963) involved one who purchased from another an operable cigarette lighter which was structurally unfinished. He then manufactured a decorative metal container, or base, designed to receive the lighter mechanism. The First Circuit held that the manufacturing of the base and the insertion of the lighting mechanism into the base constituted "manufacturing." That, to us, is a distinctly different process than the one involved in the instant case.

Similarly, we believe *Binswanger Glass Company v. United States*, 293 F.Supp. 676 (E.D.Va.1968) is distinguishable from the present case. There the taxpayer sold glass for replacement of automobile and truck windows. He would buy large rectangular sheets of glass from the manufacturer, and, as orders came in, he would cut the glass to conform to the particular window requirement. A sandcutting tool was used to make the initial cut. Alcohol was ignited in order to melt the plastic lamination. Rough edges of the glass were ground off with a diamond emory wheel or belt. Such process was held to be manufacturing and subject to the excise tax. That is not the present case. In sum, we believe our case to be closer to *Swisshelm* and *Gamble-Skogmo*, than to *Magnesium Casting* or *Binswanger*.

By holding that Jacobs' operation is not covered by 26 U.S.C. § 4061(a)(1), we need not here concern ourselves with whether Rev.Rul. 69–195 is itself invalid because of so-called "imbalance."

Judgment affirmed.