Lawrence KEASLER and Keasler Body Company, Inc., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. J–C–79–165.

United States District Court,
E.D. Arkansas,
Jonesboro Division.

March 13, 1984.

Robert Branch, Paragould, Ark., for plaintiffs.

Lawrence Sherlock, Tax Div. Justice Dept., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

On October 2, 1981, this Court granted summary judgment in favor of the plaintiffs in an action against the United States to obtain refunds of excise taxes paid pursuant to 26 U.S.C. § 4061(a)(1) (1970 & Supp. V 1975). After an appeal of that decision was dismissed by the Eighth Circuit Court of Appeals, the plaintiffs moved for an award of expenses, including attorney's fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (Supp. V 1981). For the reasons stated below, the plaintiffs' motion will be granted.

I. *Facts.*

A. *Background:*

At all times relevant to this lawsuit, the plaintiffs were engaged in the business of assembling truck chassis, truck bodies and hydraulic hoists. For the period beginning January 1, 1974, and ending September 30, 1975, the Internal Revenue Service (IRS) assessed an excise tax of $7,342.99, plus interest of $603.24 on all truck-hoist units assembled by the plaintiffs. A related excise tax of $1,321.67, plus interest of $99.82, was assessed against the plaintiffs

for the period of October 1, 1975, through March 31, 1976. The assessments were based on the IRS's determination that the plaintiffs assembling activities constituted further "manufacture" within the meaning of 26 U.S.C. § 4061(a)(1) and Revenue Ruling 69–195, 1969-Cum.Bull. 276, and thereby subject to the ten percent excise tax imposed under section 4061(a)(1). After timely paying both assessments, the plaintiffs sought refunds from the IRS. The IRS Examining Officer denied the refunds in full on October 24, 1978, and these denials were confirmed in letters from the District Director on January 9, 1979.

The plaintiffs then filed the underlying lawsuit against the United States on December 5, 1979. They contended that their assembling activities did not constitute "manufacturing" under the statute and that they were entitled to a refund of the excise taxes and interest paid, plus costs and attorney's fees. Both the United States and the plaintiffs moved for summary judgment based upon the pleadings and a joint stipulation of the relevant facts.

B. *Trial Court Decision:*

In its October 2, 1981, Order this Court granted the plaintiffs' motion for summary judgment and directed the Government to refund the taxes and interest paid by the two plaintiffs. In reaching this decision, the Court recognized the existence of Revenue Ruling 69–195, which held that the combining or assembling of dump truck hoist with a dump truck body constitutes further "manufacture" of the body and therefore is subject to the section 4061(a)(1) excise tax. The Court noted, however, that in enacting section 2109 of the 1976 Tax Reform Act, *codified at* .26 U.S.C. § 4063(d), Congress has specifically repudiated the position taken by the IRS in Revenue Ruling 69–195. The opinion states:

> Although Rev.Rul. 69–195 was in effect at the time the taxes were assessed against plaintiffs, Congress has indicated that it was an erroneous interpretation of

its intent in § 4061. Thus, the court does not view the plaintiffs as manufacturers within the meaning of the statute.

Slip. op. at 2. The Court then observed that a factually analogous case, *Jacobs Equipment Co. v. United States*, 574 F.2d 1040 (10th Cir.1978), had previously addressed the same issue. In *Jacobs Equipment*, the Tenth Circuit held that the assembly of hoists and truck bodies did "not rise to the dignity of manufacturing." *Id.* at 1042. Although it recognized that several decisions, including at least two Eighth Circuit opinions, had broadly defined the term "manufacturing," [1] the Court declined the Government's invitation to reject *Jacobs Equipment* and implement an expansive definition of the term "manufacture." As the Court concluded:

> In the instant case, the combining of the bodies and hoists was nothing more than mere assembly. The trucks did not change in their essential character. The Court therefore agrees with the Tenth Circuit in *Jacobs* that the acts of the plaintiffs in attaching hoists to truck bodies do not constitute manufacturing within the meaning of 26 U.S.C. § 4061(a)(1). That is also the intent of Congress in exempting the attachment of cranes, hoists, and winches (termed "certain modifications") from the manufacturers' excise tax.

Slip op. at 4. Judgment in favor of the plaintiffs was entered on October 2, 1981.

C. *Post-Trial Court Developments:*

The Government then filed its notice of appeal with the Eighth Circuit Court of Appeals on November 30, 1982. On April 8, 1982, the parties filed a stipulation for dismissal of the appeal with the Eighth Circuit, which stated in pertinent part that

> the appeal of the United States of America from the judgment of the United States District Court for the Eastern District of Arkansas in the above-captioned case [would] be dismissed, with preju-

---

**1.** The Court noted, however, that the cases cited by the government were "difficult to reconcile."

*See* slip op. at 4.

dice, with each party to bear its own appellate costs, except that plaintiffs' claim of entitlement to attorneys' fees is preserved for future decision by the appropriate court.

The order of dismissal entered by the Eighth Circuit on April 27, 1982, stated in part: "Motion of appellees for award of attorneys' fees and costs is denied without prejudice to it being renewed in the district court."

On May 6, 1982, the plaintiffs filed the pending motion for award of attorney's fees and costs in this Court pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. They contend that they were the prevailing parties in both the district court proceedings as well as the appellate proceeding. They also state that the position of the government was not substantially justified.

The Government has responded with two principal arguments: first, that the plaintiffs' motion for attorney's fees is untimely; and second, even if deemed timely, the position of the United States at all relevant times was "substantially justified." The Government contends that either of these facts precludes the Court from awarding attorney's fees pursuant to section 2412.

II. *Applicable Law.*

Section 2412 provides a means by which certain parties, who prevail in actions by or against the United States (or officers and agencies thereof), may be awarded costs and attorney's fees and expenses. Section 2412(a) provides the basis upon which a claim for costs may be made. Sections 2412(b) and 2412(d), which authorize the award of attorney's fees and expenses and set forth the terms and conditions under which such awards may be granted, state in pertinent part:

(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States ... in any court having jurisdiction of such action.

The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

\* \* \* \* \* \*

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed. The party shall also allege that the position of the United States was not substantially justified.

\* \* \* \* \* \*

(2) For the purposes of this subsection—

(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees. (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ...

attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

(B) "party" means (i) an individual whose net worth did not exceed $1,000,-000 at the time the civil action was filed, (ii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed $5,000,000 at the time the civil action was filed . . ., or (iii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization, having not more than 500 employees at the time the civil action was filed;

 It is therefore plain to see that section 2412 authorizes *two* independent bases by which a party may recover attorney's fees when it prevails in a civil proceeding brought by or against the Government.[2] The first of these is discretionary: Under section 2412(b), a court *may* award attorney's fees to a prevailing party "to the same extent that any other party would be liable under the common law . . . ." The common law rule, normally denoted the "American Rule", provides that each party must bear its own attorney's fees unless: the non-prevailing party acted in "bad faith," the non-prevailing party willfully disobeys a court order, or the prevailing party's efforts created a "common benefit" or "common fund" in which a class of persons will share. *See Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247, 257–59, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975). *See also Knights of the K.K.K. v. East Baton Rouge Parish School Board*, 679 F.2d 64, 67 (5th Cir. 1982); *The Citizens Bank, Valley Head, Alabama v. United States*, 558 F.Supp. 1301, 1302 (N.D.Ala.1983). Thus, a court

may make an award pursuant to section 2412(b) if any of the exceptions applies to the facts of the case. In this case, plaintiffs have made no attempt to claim entitlement to attorney's fees under section 2412(b).

The second basis for attorney's fees under the EAJA, set forth in section 2412(b), is essentially non-discretionary:

Except as otherwise specifically provided by statute, a court *shall* award to a prevailing party other than the United States fees and other expenses, . . . incurred by that party in any civil action

. . . .

Section 2412(d)(1)(A) (emphasis added). *See Goldhaber v. Foley*, 698 F.2d 193, 195–96 (3d Cir.1983); *Knights of the K.K.K.*, 679 F.2d at 67; *The Citizens Bank*, 558 F.Supp. at 1302. If the party seeking attorney's fees proves three facts—that it was "the prevailing party," that it can meet the requirements set forth in section 2412(d)(2)(B), and that it has filed a timely request, *see* section 2412(d)(1)(B)—then, subject to two exceptions, a court must award the fees.

 The two exceptions are critical. If the Court finds that the Government's position was "substantially justified" or if the Court finds that "special circumstances" make the award of attorney's fees unjust, then no such award should be made. It is important to realize, however, that the burden of proving the applicability of these two exceptions rests with the Government. *See Foley Construction Co. v. United States Army Corps of Engineers*, 716 F.2d 1202, 1204 (8th Cir.1983). Of course, as noted in the House Report accompanying the EAJA, the mere fact that the Government bears the burden of proof is not meant to suggest that its position was *not* substantially justified merely because the Government lost the case. Furthermore, the Government need not persuade the

---

**2.** It is clear that section 2412 allows recovery of attorney's fees for work performed at both trial and appellate levels. *See United States v. 329.73 Acres, Grenada and Yalobusha Counties,* 704 F.2d 800, 811 (5th Cir.1983) (en banc); *United*

*States for Heydt v. Citizens State Bank,* 668 F.2d 444, 447 (8th Cir.1982) (where government withdraws its appeal without obtaining some favorable concession from the other party, attorney's fees may be assessed).

Court that its decision to litigate stemmed from the belief that it had a substantial probability of prevailing. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4989–90, *cited in United States for Heydt v. Citizens State Bank,* 668 F.2d 444, 447–48 (8th Cir.1982). In essence, to meet its burden of proving it acted with substantial justification, the government must demonstrate that its position was reasonable in law and in fact.[3] *Foley Construction Co.,* 716 F.2d at 1204. Where the issue of reasonableness presents a close question, a more refined analysis that considers the clarity of the applicable law, the foreseeable length and complexity of the litigation, and the consistency of the Government's position, is apropos.[4] *See Spencer v. NLRB,* 712 F.2d 539, 557–61 (D.C.Cir.1983), *cited in Foley Construction Co.,* 716 F.2d at 1204.

■ The "special circumstances" exception also provides a "safety valve" primarily for situations in which the Government advances novel, yet unsuccessful, theories in support of its position. Depending upon the facts of the case, if the Government makes the argument in good faith the Court might properly determine that it would be unjust to assess attorney's fees. *See Knights of the K.K.K.,* 679 F.2d at 68.

### III. *Questions Presented.*

The foregoing raises five pivotal issues:

First, is plaintiffs' motion for expenses and attorney's fees timely?

Second, were the plaintiffs "prevailing parties" within the meaning of the EAJA?

Third, was the position of the United States "substantially justified"?

Fourth, are there other special circumstances that would make an award of expenses and attorney's fees unjust?

Fifth, if plaintiffs are entitled to expenses and attorney's fees, what is the proper award in this case?

### IV. *Timeliness of the Motion.*

The Government argues that the pending motion for expenses and attorney's fees incurred at the trial level is untimely because it was not filed "within thirty days of final judgment" as is required under section 2412(d)(1)(B). The Government concedes that the statute does not define the term "final judgment," but it contends that it should "be construed in conformity with those provisions of the Federal Rules of Civil Procedure that define the terms "judgment" or "final judgment" as including any "decree and any order from which an appeal lies." *See, e.g.,* Rule 54(a). According to the Government, "the 'finality' of a judgment or order is consistently used to denote its appealability." Under this analysis, the Government asserts that the applicable point from which the thirty-day period commenced running is October 2, 1981, the date on which the district court entered judgment. The Government states that the plaintiff did not make any request for attorney's fees until April 8, 1982, when the case was on appeal in the Eighth Circuit.[5] In light of this April 8, 1982, request, as well as the formal application for fees that was filed in this Court on May 3, 1982, the Government does not dispute the timeliness of the request for *appellate-level* attorney's fees. The Government states, however, that since no motion for fees was filed in *this* Court within thirty days of the October 2, 1981, judgment (i.e., by Novem-

---

3. In this case, the facts were not disputed; the cross motions for summary judgment were accompanied by a detailed listing of facts to which both sides had stipulated. There is no indication that the government viewed the facts any differently before the litigation was instituted.

4. Furthermore, where the government is a party *defendant* and litigates until a decision on the

merits is reached by the trier of fact, the extent to which the Government was privy to all relevant facts may have relevance to the "substantial justification" issue.

5. Actually, the plaintiffs requested attorney's fees in their Complaint. *See* Complaint at p. 6.

ber 1, 1981), then the plaintiffs' request for *trial-level* attorney's fees is untimely.[6]

The Government's argument carries some superficial appeal. The conventional and perhaps intuitive definition of "final judgment" accords with the notion of "appealability," as arises in connection with Rules 54(a), 54(b), 54(c), 60(b), 62(a) and 62(c) as well as Rules 54(d), 58, and 59(e). The Ninth Circuit in *McQuiston v. Marsh*, 707 F.2d 1082, 1084–85 (9th Cir.1983), has apparently adopted this position, stating that " 'final judgment' should be defined by its common usage in contexts such as 28 U.S.C. § 1291, Fed.R.App.P. 4(a) and Fed. R.Civ.P. 54. Therefore, a request for attorney's fees under [section 2412(d) ] is untimely if filed more than 30 days after the district court has entered judgment."

Yet for a number of reasons this Court finds the Government's argument unpersuasive. As a threshold matter, the Court observes that the EAJA provided no explicit clues as to the meaning of the term "final judgment." At the very least, the legislative history lacks any indication that in *appealed cases* Congress meant to preclude requests for trial level attorney's fees unless they are filed within thirty days of the trial court's original decision on the merits. Admittedly, tying the thirty-day limitation period to the trial court's original decision on the merits is justified where all litigation terminates at the trial court level. As will be discussed *infra*, finality of the controversy, including the collateral issue of entitlement of attorney's fees, is important. The Eighth Circuit has recognized this fact in addressing a section of the EAJA that provides attorney's fees for *agency* adjudications—5 U.S.C. § 504 (Supp. V 1981)—by strictly construing the thirty-day filing requirement in connection with an agency's final order in an adversary proceeding. *See Monark Boat Co. v. NLRB*, 708 F.2d 1322 (8th Cir.1983) (period begins to run from date final order is issued, not from date parties receive actual

notice of order). Nevertheless, the need and wisdom of applying the Government's interpretation of the thirty-day rule becomes highly questionable if appeal has been taken from the trial court's decision on the merits. Moreover, considering two of the fundamental purposes of the EAJA—reining in or remediating unreasonable practices by the Government and its agencies, *see Foley Construction Co.*, 716 F.2d at 1203, and reducing deterrents to litigating against the Government, *see Spencer v. NLRB*, 712 F.2d 539, 549–50 (D.C.Cir.1983)—it would appear inconsistent for Congress to have placed excessive strictures on fee requests where the Government is responsible for prolonging the life of the litigation through appeal.

Several decisions addressing the timeliness of attorney's fees requests under statutes other than the EAJA also cast doubt on the Government's argument. The Supreme Court in *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), scrutinized the applicability of a ten-day deadline on motions for attorney's fees under the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988. There, the petitioner alleged a constitutional violation and therefore sued under 42 U.S.C. § 1983. The district court granted relief to the petitioner in a judgment entered November 15, 1977 (which was subsequently modified on December 16, 1977), *see* 455 U.S. at 447 n. 2, 102 S.Ct. at 1164 n. 2, and the respondent appealed.

While on appeal, the parties signed a settlement agreement. The case was then remanded to the district court, which approved the settlement and entered judgment on January 26, 1979. No motion for attorney's fees was filed by the petitioner until June 7, 1979—nearly four and one-half months after the entry of judgment. The district court granted the motion, but on appeal the First Circuit reversed the

---

**6.** The Government makes no argument that the fourteen-day deadline for attorney's fees requests imposed under Rule 28 of the Local Rules for the Eastern and Western Districts of Arkansas would preclude plaintiffs' request. It is clear that it has no application since it became effective as of September 1, 1982.

award of attorney's fees on the ground that the petitioner's post-judgment motion constituted a motion to alter or amend the judgment, governed by Rule 59(e). The First Circuit reasoned that as so construed, the motion fell outside the ten-day time limit contained in Rule 59(e) and therefore was time-barred.

The Supreme Court reversed. The Court noted that application of Rule 59(e) to requests for attorney's fees under Rule 59(e) "could yield harsh and unintended consequences." *Id.* at 452, 102 S.Ct. at 1167. It also noted that in civil rights actions, "many final orders may issue in the course of the litigation." *Id.* at 453, 102 S.Ct. at 1167 (quoting *Bradley v. Richmond School Board,* 416 U.S. 696, 722–23, 94 S.Ct. 2006, 2021–22, 40 L.Ed.2d 476 (1974)). Thus, courts could become flooded with attorney's fees requests for each interim ruling. Moreover, application of the ten-day rule could unduly limit the time during which the parties could attempt to negotiate private settlements of fee questions. As the Court observed, this could proliferate the litigation of fee requests, thereby destroying judicial economy. *Id.* 455 U.S. at 453, 102 S.Ct. at 1167.

Two important points emerge from *White.* First, there seemed to be no question that, regardless of the applicability of Rule 59(e), the crucial date from which *any* time bar would run was January 26, 1979. It should be recalled that this was not the date of the district court's original decision on the merits—November 15, 1977 (as amended December 16, 1977)—rather it was the date the trial court disposed of the case *after* remand from the First Circuit—January 26, 1979. In other words, the problem was *not* whether the petitioner had filed his claim within ten days of the trial court's original decision on the merits, rather it was whether he was foreclosed from seeking attorney's fees by waiting more than four months after the post-re-

mand judgment of January 26, 1979, before filing his initial request for attorney's fees.

The parallels between *White* and the case at bar are obvious. Here, the plaintiffs failed to file their motion for attorney's fees within thirty days of this Court's October 2, 1981, judgment. *White* suggests, however, that this "omission" is irrelevant; the final judgment from whence *any* sort of limitations period would run would be the trial court's final judgment *after* the Eighth Circuit remanded the case following the Government's appeal.

This coincides with the second relevant lesson from *White.* *White* observed that a court's inquiry into the entitlement of an attorney's fee award is "separate from the decision on the merits—an inquiry that cannot even commence until one party has 'prevailed'." 455 U.S. at 451–52, 102 S.Ct. at 1166. In short, it is collateral to the decision on the merits. The point is that the stringent time limits prescribed under the federal rules for any post hoc challenges to the trial court's decision on the merits simply do not apply in the context of attorney's fee requests. To be sure, it is critical that any challenge to the decision on the merits, *e.g.,* motion to amend the judgment, be filed quickly after entry of the decision on the merits. After all, a delayed request to the trial court for review of its decision on the merits would impede the finality of the underlying decision and prevent an appeal from being lodged.

■ By contrast, as noted above, the request for attorney's fees stands on totally different footing. It is collateral to the decision on the merits. An appeal on the merits may be filed whether or not an attorney's fees question remains to be decided.[7] Thus, any unsettled question regarding attorney's fees does not prevent the case (the on-the-merits decision) from proceeding to appellate adjudication. In short, the concern for timeliness in seeking a revision of the trial court's decision on

---

**7.** The trial court retains jurisdiction to hear an attorney's fees request, even while the appellate court is exercising jurisdiction over the appeal

on the merits. *See, Obin v. Dist. No. 9 of the Int'l Ass'n of Machinists & Aerospace Workers,* 651 F.2d 574, 583–84 (8th Cir.1981).

the merits which *is* vital in post-judgment motions regarding the merits of the action, is not apposite in the context of fee requests.

*United States for Heydt v. Citizens State Bank,* 668 F.2d 444 (8th Cir.1982), also supports this view. There the court suggested that eligibility for fees and, therefore, requests for fees, *may* be made prior to the conclusion of all appellate work.

> In cases that are litigated to conclusion, a party may be deemed prevailing for purposes of a fee award in a civil action prior to the losing party having exhausted its final appeal.

*Id.* at 447. The context of the statement reveals, however, that the Eighth Circuit contemplated that many fee requests would be filed only after all appellate work has been completed.

The Court also finds that a recent decision of the Seventh Circuit strongly supports the view that the plaintiffs' petition is not untimely. In *McDonald v. Schweiker,* 726 F.2d 311 (7th Cir.1983), the court addressed a set of facts that are virtually indistinguishable from those of the case at bar. The issue was whether an application for fees pursuant to section 2412(d) is untimely if filed more than thirty days after the trial court enters the original judgment, although within thirty days after appellate proceedings end. As in this case, the trial court had entered summary judgment for the plaintiff. The Government timely filed a notice of appeal, but ultimately moved to dismiss the appeal. The Seventh Circuit dismissed the appeal on March 30, 1982, and on April 29, 1982, the plaintiff moved for an award of attorney's fees and costs in the trial court. After the trial court granted the motion, the Government appealed, contending that the request for attorney's fees was untimely. *Id.* at 312–13.

The Seventh Circuit affirmed. It first observed that the term "final judgment" has no "single fixed meaning." *Id.* at 313.

> Sometimes it denotes a judgment that disposes of the plaintiff's claim in the district court. See, e.g., Fed.R.Civ.P. 54(b); *cf* 28 U.S.C. § 1291 ("final decisions"). But sometimes it denotes the judgment that writes *finis* to the entire litigation, after all appellate remedies have been either exhausted or, as here, abandoned. See, e.g., Clayton Act, § 5(a), 15 U.S.C. § 16(a). Context may disambiguate. Where the purpose of a statute or rule is to indicate what orders are appealable, as is true of Fed.R.Civ.P. 54(b) or 28 U.S.C. § 1291, finality must refer to the pre-appellate proceedings. But in a statute such as 46 U.S.C. § 748, which defines the circumstances under which the United States will pay admiralty claims, "final judgment" must mean final after all appeals, for one cannot imagine the government being willing to pay before then (as we are about to see).

*Id.* at 313.

The court then observed that even considering the need to safeguard the public fisc, it made little practical difference whether the thirty-day period runs from the end of the district court's proceedings or from the end of *all* the proceedings; the amount of the award will not change. By contrast, however, application of the Government's version of the rule could have adverse consequences to the normal fee seeker:

> One such consequence is the cost to the applicant of having to file multiple fee applications. *United States v. 329.73 Acres,* 704 F.2d 800, 810–11 (5th Cir. 1983), holds, and the government does not question, that the Equal Access to Justice Act, like other attorney-fee statutes, allows a prevailing party in appropriate cases to obtain an award of fees for time spent prosecuting or defending an appeal as well as for time spent litigating in the district court. *Cf. Bond v. Stanton,* 630 F.2d 1231, 1234 (7th Cir. 1980). This in itself is a damaging concession for the government to make since if "final judgment" means final judgment in the district court a prevailing party would have to file an application for fees on appeal before the amount of those fees was known. As this would be

a rather absurd way of proceeding we interpret the government's concession to mean that, for purposes of getting an award of fees for appellate work, "final judgment" means the final decision of the appellate court. This shows that "final judgment" indeed does not have one meaning and also that under the government's view Mrs. McDonald would have had to file a second fee application, for any appellate work (if the government had pursued its appeal), after the end of the appellate proceedings. It makes more sense, at least from the claimant's viewpoint, to be able to file a single application at the conclusion of all the proceedings, though if the government unreasonably resists the fee application, and the claimant seeks fees for proving fees, as in *Bond v. Stanton, supra,* 630 F.2d at 1235, or *Muscare v. Quinn,* 680 F.2d 42 (7th Cir.1982), the claimant would have to file a supplementary fee application after the conclusion of the proceeding on his initial fee application.

*Id.* at 314.

The Seventh Circuit acknowledged that requiring the request to be filed within thirty days of the trial court's decision on the merits would allow unified or consolidated appeals, thereby promoting judicial economy at the court of appeals level. But the court found:

> there is no indication that the Congress that enacted the Equal Access to Justice Act was worried about the burdens the Act might place on the courts of appeals. And in any event the judicial economy may be largely illusory if ... the claimant is entitled in suitable cases to reimbursement of appellate fees.

*Id.* at 314.

Three other considerations led the Seventh Circuit to reject the Government's theory. First, it noted that in many cases the prevailing party *will* seek fees within thirty days of the original trial court judgment even when the case is appealed.

> The legislative history indicates and the government concedes that the 30-day provision in the Act was meant to establish a deadline, not a starting point. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18 (1980). The claimant can apply for fees as soon as he has prevailed, i.e., as soon as the district court has entered its final judgment; and in many cases the claimant's lawyer, being hungry to see some cash, will do just that and the advantages of consolidated appeals will be realized. (As we shall see, the lawyer will not actually be paid till all appellate proceedings are finished; but the sooner he gets his fee application in and the award is made and, should the government challenge it, affirmed on appeal, the sooner he will be paid after the judgment for his client finally becomes final.) In any event, giving the claimant a choice whether to ask for fees after he wins in the district court or after the appeal maximizes his welfare, at some cost perhaps to the courts but none we can think of to the executive branch.

*Id.* at 314.

Second, the Court noted that the Government's interpretation of the thirty-day rule could unjustifiably discourage the filing of completely meritorious fee requests.

> An additional consideration is that to force the claimant to put in his fee application within 30 days of the filing of the final judgment in the district court, which is to say before the government need file its notice of appeal, delivers into the hands of the government a potent, acknowledged, and from the standpoint of the policy of the Equal Access to Justice Act perverse weapon for discouraging meritorious fee applications. As this case demonstrates, the government is unlikely to pursue an appeal where the stakes are only $652.50. Its adversary knows this and knows also that if he increases the stakes to the government by applying for fees, the government (as it emphasized to us in its briefs and at argument) will be more likely to appeal the underlying judgment. Thus, if Mrs. McDonald's counsel had had to decide whether to apply for fees before the government had to decide whether to

pursue the appeal, he would have faced an exquisite dilemma: forego any fee application and thereby preserve the wretched pittance that his client had wrung from the Social Security Administration only after bringing a review proceeding in a federal district court, or jeopardize her judgment in the hope of getting a reasonable fee for his work. The framers of the Equal Access to Justice Act could not have meant to create such a dilemma when they used the words "final judgment" without in all likelihood considering what the words might mean in the setting of the present case. They wanted to make it easier, not harder, for people of limited means to collect their small claims from the government. See H.R.Rep. No. 1418, *supra,* at 18.

*Id.* at 315.

Finally, the Seventh Circuit noted the ultimate irony of the Government's position: Although the Government insisted that a fee application must be filed within thirty days of the trial court's decision on the merits, the Government conceded it will not pay a claim for costs and attorney's fees brought under the EAJA until all appellate proceedings are exhausted. *See* discussion at 28 U.S.C. § 2414, *infra.* As the court concluded, "we are at a loss to see what interest is served by requiring that the fee application be made before— sometimes long before—it is actually payable." *Id.* at 315.

This Court finds the Seventh Circuit's reasoning to be sound. To the extent that the Ninth Circuit's *McQuiston* decision differs, this Court allies with *McDonald.* Nevertheless the last point raised by the Seventh Circuit deserves modest amplification. As noted above, the Government conceded that the General Accounting Office will not pay an award of fees pursuant section 2412(d) until all appellate proceedings have been exhausted. In a sense, this is a very damaging admission, but it is one that the Government cannot avoid making.

Section 2414 of Title 28 authorizes the General Accounting Office to pay all final judgments—including attorney's fees awarded under section 2412(d), *see* section 2412(d)(4)(A)—against the United States. Interestingly, section 2414 disbursements are keyed to certifications by the Attorney General either that no appeal is to be taken by the United States or, if the Government appeals the decision and that decision is affirmed, that the United States will seek no further review. Section 2414 states, in part:

Whenever the Attorney General determines that no appeal shall be taken from a judgment or that no further review will be sought from a decision affirming the same, he shall so certify and *the judgment shall be deemed final.*

(emphasis added). It is plain to see that *the Government* considers a judgment "final" for purposes of making disbursements under Section 2414 only when the Attorney General decides to seek no further appellate review. In other words, a judgment is not deemed "final" until all appeals have been abandoned or exhausted.

This theme recurs in 31 U.S.C. § 1304, which provides authorization for appropriations to pay "final judgments, awards, compromise settlements, and interest and costs" when they are payable under section 2414 (or several other statutes). It is clear that for purposes of section 1304, the "final judgment" in cases that have been appealed does *not* occur until the appellate court has acted. The subsection dealing with payment of interest states:

Interest may be paid from the appropriation made by this section—

(A) on a judgment of a district court, only when *the judgment becomes final after review on appeal* or petition by the United States Government . . . .

31 U.S.C. § 1304(b)(1)(A) (emphasis added).

Reference to the two statutes reveals the inconsistency of the Government's current position in cases that are appealed. On the one hand, judgments can be "final" in the sense of being "due and payable only after the Government exhausts or abandons its right to appeal. On the other hand, accord-

ing to the Government, the judgment is "final" for purposes of the deadline for claiming trial-level fees only as of the date the trial court enters its decision on the merits. Absent a clear indication from Congress to the contrary, the Government cannot have it both ways.

 The Court must conclude that where the trial court's decision is appealed, the right of the prevailing party at the trial level to request attorney's fees is not extinguished. Instead, in cases that are appealed, the "final judgment" referred to in section 2412(d)(1)(B) can include the date the trial court enters judgment pursuant to the appellate court's mandate.[8] In short, under the section 2412 limitation period, the immortal words of Yogi Berra seem appropos—"The game isn't over till it's over." *See Bartlett's Quotations*, at 903 (15th ed. 1980). For purposes of the plaintiffs in this case, the thirty-day deadline for filing their trial-level attorney's fees requests did not start running until the entire litigation was over—i.e., when the district clerk entered the mandate of the Eighth Circuit.

The plaintiffs filed their attorney's fees request on May 6, 1984, which was only nine days after the Eighth Circuit dismissed the appeal, and only two days after the District Clerk entered the mandate. The motion was therefore filed within thirty days of the "final judgment" for purposes of section 2412(d)(1)(B).

### V. *Plaintiffs as the Prevailing Parties.*

 Since the matter is properly before the Court, it must be determined whether the plaintiffs were "prevailing parties" within the meaning of section 2412(d).[9] Having secured summary judgment in their favor there can be no doubt that the plaintiffs were the prevailing parties at the trial level. *See Citizens Bank, Valley Head, Alabama v. United States*, 558 F.Supp.

1301, 1302 (N.D.Ala.1983). Furthermore, since the appeal was dismissed and the Government obtained no favorable concession by virtue of the appeal, it appears that plaintiffs can be deemed "prevailing parties" for purposes of the appeal. *See id. See also United States for Heydt v. Citizens State Bank*, 668 F.2d at 447. *Cf. Bishop v. Committee on Professional Ethics*, 686 F.2d 1278, 1290 (8th Cir.1982) (dismissal of appeal on grounds of mootness does not preclude award of attorney's fees under 42 U.S.C. § 1988).

### VI. *Substantial Justification.*

The next inquiry must be whether the position of the United States was "substantially justified." If it was, then the plaintiffs are not entitled to recover attorney's fees.

At the outset, the Court observes that there is a division among the courts regarding which Government "position"—the agency's position *prior to* the litigation (i.e., that which precipitated the suit), or that taken *during* litigation—must be "substantially justified." *Compare Spencer v. N.L.R.B.*, 712 F.2d 539 (D.C.Cir.1983) (position during litigation) *with Natural Resources Defense Council v. E.P.A.*, 703 F.2d 700, 707 (3d Cir.1983) (position that precipitated the suit). So far, the Eighth Circuit has avoided the question. *See Cornella v. Schweiker*, 728 F.2d 978 at 982 (8th Cir.1984) ("persuasive arguments" support both theories); *Foley Construction Co.*, 716 F.2d at 1204. Yet as noted in *Foley Construction Co.*,

> In most cases "it makes no functional difference how one conceives of the government's 'position'" because "the litigation position of the United States will almost always be that its underlying [pre-trial] action was legally justifiable."

---

**8.** As provided in Local Rule 18, "When a cause is remanded by an appellate court and further proceedings are not required, the order of the appellate court shall be the order of the District Court and shall be entered by the Clerk." Thus, in the case at bar, the judgment became "final"

when the district clerk entered the mandate of the Eighth Circuit.

**9.** The plaintiffs state, and the Government does not dispute, that the plaintiffs fall within the net worth requirements set forth in section 2412(d)(2)(B).

*Id.* (quoting *Spencer,* 712 F.2d at 551–52). Under the facts of the instant case, the same is true: the Government maintained throughout the litigation that its underlying position—denying the excise tax refunds—was valid. Thus, there really was no change in the Government's position. *See Goldhaber v. Foley,* 698 F.2d 193, 196 (3d Cir.1983). As this Court analyzes the case, the Government's position was not substantially justified in its pre-litigation *or* its litigation position. The Court will, however, focus primarily on the latter.

### A. *Substantial Justification at Trial Level.*

The Government has contended that it was substantially justified in taking the position it adopted at the trial level. It first contends that the law was not clearly adverse to its position insofar as Revenue Ruling 69–195 directly supported the Government's view and other caselaw had endorsed a broad interpretation of the term "manufacturing" for purposes of section 4061(a). The plaintiffs' response takes two forms. First, they contend that since Revenue Rulings are promulgated by the Government, the Government should not be able to justify its position in litigation simply by invoking "precedent" that it has, itself, authored. Second, they argue that even assuming that at *some* time the Government might have reasonably relied on Revenue Ruling 69–195, any such reliance was clearly not justifiable in the wake of the Tenth Circuit's decision in *Jacobs Equipment Co. v. United States,* 574 F.2d 1040 (10th Cir.1978). The plaintiffs state that the *Jacobs Equipment* case was explicitly called to the attention of the IRS during the agency refund proceedings, but that the Government refused to abandon the position it had taken in Revenue Ruling 69–195. In short, plaintiffs argue that the Government steadfastly refused to budge from its position even though it knew unmistakable precedent contradicted its position in the instant litigation.

Several facts persuade the Court that the Government's position was not substantially justified.

### 1. *Reliance on the IRS' Revenue Ruling.*

■ First, the Court believes that the government's reliance on Revenue Ruling 69–195 does not give it sufficient grounds to claim its position was "substantially justified." As plaintiffs point out, revenue rulings are not the product of an unbiased arbiter. Rather, they are the work of the IRS, clearly not a disinterested party in the instant litigation. To be sure, in some contexts, administrative pronouncements may acquire a degree of precedential effect. Thus, where the agency has particular expertise in an area and where Congress has specifically empowered the agency to prescribe certain rules and regulations, the fruit of the agency's labors is entitled to some deference by the Courts. Such deference is not limitless, however, and on occasion an agency's reliance on its own regulations or rulings may prove unjustified.

The Supreme Court in *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 102 S.Ct. 821, 70 L.Ed.2d 792 (1982), recently addressed the degree of deference due Treasury regulations. In doing so it drew a dichotomy between regulations whose promulgation is expressly contemplated by Congress versus those whose promulgation is carried out under the Commissioner's general rule-making authority. *Id.* at 24, 102 S.Ct. at 823. The latter category is entitled to less deference than the former. *See also Monark Boat Co. v. N.L.R.B.,* 708 F.2d at 1327 ("we accord lesser deference to interpretative regulations than we do to substantive regulation issued pursuant to an express statutory authority.").

■ This view parallels the notion, long accepted in the Eighth Circuit, that revenue regulations deserve less deference than do Treasury regulations. *See United States v. Eddy Brothers, Inc.,* 291 F.2d 529, 531 (8th Cir.1961). *See also Fargo Foundry Steel & Mfg. Co. v. United States,* 415 F.Supp. 1362, 1365 n. 2 (D.N.D.1976) (interpreting section 4061), *aff'd,* 553 F.2d 103 (8th Cir.1977). The same sort of analysis as articulated in *Vogel Fertilizer* seems

appropriate in adjudging the degree of justification the Government might have in relying on either regulations or revenue rulings. Where the degree of deference commonly given by the courts is high, as in the case of specifically-authorized regulations, the agency might easily establish that it was substantially justified in relying upon the debated regulation as the legal authority for taking a position adverse to the prevailing party. When, however, the degree of judicial deference is low, such as in the case of revenue rulings or interpretative regulations, the agency will less easily be able to meet its burden of showing its position was substantially justified.

■ Under this framework, the Court must conclude that the Government cannot automatically establish "substantial justification" simply by brandishing a revenue ruling. Moreover, where the revenue ruling relied upon has been distinguished or discredited by the courts, as has been the case with Revenue Ruling 69–195, the Government's basis for claiming justification all but evaporates. After all, the Government must realize the importance of uniformity among the courts in the administration of tax laws. It must appreciate the fact that one court must follow the decisions of a court of appeals in another circuit unless it is convinced that such decisions are erroneous. *See United States v. Eddy Brothers, Inc.*, 291 F.2d 529, 531 (8th Cir.1961).

■ As this Court noted in granting summary judgment for the plaintiffs, the Tenth Circuit's *Jacobs Equipment* case is indistinguishable from the case at bar. Since the *Jacobs Equipment* decision runs squarely against the Government's position, the Government cannot easily claim it was substantially justified in litigating the present case. Indeed, at two separate stages the Government explicitly recognized the precedential effect of *Jacobs Equipment*. For example, in its brief in opposition to the plaintiffs' motion for summary judgment, the Government stated:

> [A]lthough Jacobs Equipment is directly on point, it is submitted that the case

was wrongly decided and should not be followed by the Court.

(R. 35). Moreover, during its initial evaluation of the plaintiffs' request for a refund, the IRS' Examining Officer denied the refunds despite his recognition that the trial and appellate courts in *Jacobs Equipment* were contrary to the provisions of Revenue Ruling 69–195. The Examining Officer's remarks are quite telling:

> Your claim of $7,342.99 for refund of the additional tax assessed resulting from an earlier examination is disallowed. The disallowance is made even though the decisions of District Court and Tenth Circuit Court of Appeal[s] in the Jacobs Equipment Co. case were contrary to the provisions of Revenue Ruling 69–195. The Service's position held in Revenue Ruling 69–195 has not been changed at this time which makes the disallowance necessary.

Later in explaining his decision, the Examining Officer states:

> In both the U.S. District and Tenth Circuit Court of Appeal[s] the assembly of a truck body and hoist was not considered further manufacturing subject to the 10% manufacturers excise tax. The issue in the Jacobs Equipment Co. case appears to include the same facts as your case, however, as stated in page 1 Revenue Ruling 69–195 remains unchanged for now and those provisions outlined therein must be followed as long as they apply.

In short, at the time the refunds were denied by the IRS, the Government was clearly aware of the legal and factual similarities between the plaintiffs' situation and that of the plaintiff in *Jacobs Equipment*. It chose, however, to ignore applicable precedent and instead attempted to resurrect its own discredited version of the law. The Government therefore has conceded that it knew the law was established and adverse to its position when it chose to litigate the plaintiffs' entitlement to refunds. The Government cannot say that the law was unclear, or that *Jacobs Equipment* was somehow distinguishable from

the case at bar. By choosing to litigate, the IRS was simply attempting to manufacture a contrary precedent of its own. Such motivation cannot lend justification to the Government's position.

This point was aptly noted in *Citizens Bank, Valley Head, Alabama v. United States*, 558 F.Supp. 1301 (N.D.Ala.1983), where the plaintiff sought to recover an IRS deficiency assessment it had previously paid. The court granted the plaintiff's motion for summary judgment because it found that a previous Fifth Circuit opinion represented "clear and controlling precedent on the only issue presented...." *Id.* at 1303. The Government filed notice of appeal to the Eleventh Circuit, but later voluntarily dismissed its appeal. When subsequently called upon to award attorney's fees, the trial court observed the close application of the Fifth Circuit case and then noted that the Government attorney had admitted that "the IRS took its position in order to create an 'appellate vehicle'" so that the Eleventh Circuit might consider, and perhaps limit the precedential effects of the prior Fifth Circuit opinion. *Id.* at 1303. The trial court deemed this goal insufficient to support a finding that the Government's position was substantially justified.

A similar decision was reached in *Natural Resources Defense Council v. U.S.E.P.A.*, 703 F.2d 700 (3d Cir.1983). There, the court found that certain agency administrative action was not substantially justified because the Third Circuit had previously addressed the issue. As the court summarized: "The law was already settled that [the agency's action] could not lawfully be done." *Id.* at 712. It thereupon awarded attorney's fees to the plaintiff.

2. *Reliance on Caselaw.*

Furthermore, the Government's reliance on other caselaw also fails to support its claim of substantial justification. To the Government's credit, the cases it cited tend to suggest that the term "manufacturing" has, on occasion, been applied broadly under section 4061(a). Yet the facts in each of the cases cited by the Government varied significantly from those in this case; none of those cases involved mere assembly processes, as arose in this case. Furthermore, the Court noted other caselaw cast doubt on the Government's cases for purposes of the instant action. Most importantly, however, none could possibly be nearly so relevant to the instant action as *Jacobs Equipment*, which even the Government conceded was "directly on point." In light of the indistinguishable precedent established in *Jacobs Equipment*, the Government's cases—even considered in conjunction with Revenue Ruling 69–195—provided insufficient support to render the Government's position substantially justified.

B. *Substantial Justification at the Appellate Level.*

■ The Court must also conclude that the Government was not substantially justified in the appellate portion of this case. As noted above, the Government appealed the case shortly before the sixty-day period for filing notice of appeal would have ended. It subsequently voluntarily dismissed its appeal without obtaining any sort of concession or partial settlement from the plaintiffs. The Government contends that at the time it filed its notice of appeal, the Solicitor General had made no final decision whether to appeal the case. The Government's attorney therefore filed a notice of appeal "solely to protect the Government's right to appeal ...." These facts, the Government argues, renders it "substantially justified." The Court disagrees. Just because the Justice Department's internal processes are slow does not exculpate the United States from the consequences of filing frivolous appeals. There is no indication that when the decision to appeal was made the Government had conceived of any new legal arguments or new precedents that would have buttressed the position this Court had previously rejected. The only significant consequence of the Government's exercising its right to file a notice of appeal is that plaintiffs were forced to incur legal expenses in addition to those sustained at the trial court level.

Nothing favorable to the Government's position resulted from the appeal. The Court must conclude that the Government has failed to offer any persuasive legal *or* factual basis on which this Court could find the Government was substantially justified during the appellate proceedings in this case.

## VII. *Would "Special Circumstances" Preclude an Award?*

Since the Court finds that the Government's position in the trial and appellate proceedings was not "substantially justified," it must next ascertain whether "special circumstances" would render an award of attorney's fees unjust. As discussed above, the "special circumstances" exception to liability for attorney's fees was designed in large part to ensure that the Government not be unduly "deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underly vigorous enforcement efforts. It also gives the court discretion to deny awards where equitably considerations dictate an award should not be made." H.R.Rep. No. 1418, 96 Cong.2d Sess. 11, *reprinted in* 1980 U.S.Cong. & Ad.News 4943, 4990.

This Court believes that the "special circumstances" exception to liability can play a critical role within the framework of the EAJA. Without question, the spectre of potential government liability for attorney's fees creates a powerful tool in the hands of private litigations. As a consequence, the availability of fee-shifting mechanisms such as the EAJA must be channelized within bounds to ensure that the remedial policies underlying the fee-shifting statutes do not run roughshod over other equally important public objectives. The public, as represented by the Government in these proceedings, is entitled to aggressive advocacy. Thus, the Government must not be deterred from taking an agressive stand on issues merely due to the fear of incurring an assessment of attorney's fees. Indeed, even where a court's rejection of a novel legal argument suggests that the Government's position was not "substantially justified" the advancement of a novel legal argument might justify invocation of the "special circumstances" exception to fees liability. *See Citizens State Bank for Heydt v. United States*, 668 F.2d at 447–48; *Knights of the K.K.K. v. East Baton Rouge Parish School Board*, 679 F.2d 64, 68 (5th Cir. 1982). *But see Nunes-Correia v. Haig*, 543 F.Supp. 812 (D.D.C.1982) (mere fact that underlying regulation had never been challenged previously does not preclude award under special circumstances exception).

▪ Nevertheless, at a certain point "novel" legal arguments lose their lustre. For example, where the Government's legal theory has previously been advanced, yet clearly rejected, by the same court or other courts, the theory eventually becomes nothing more than a legal wallflower: the chances are very slim that it will ever be embraced. As the Eighth Circuit explained in *Eddy Brothers*, the interest in promoting uniform administration of the tax laws requires decisions of courts of appeals to be followed unless it is clear they are erroneous. 291 F.2d at 531.

▪ Of course, the Government should not be, and, indeed, is not, *precluded* from advancing legal theories that have been rejected in other courts, including federal courts of appeals. Indeed, the IRS has staunchly sought adherents to this view: upon being rebuffed by one court, it has frequently searched throughout the country for more propitious rulings from other courts.[10] *See, e.g., Citizens Bank*, 558

---

10. While some observers have criticized this practice, *see e.g.,* Schaefer, *Stare Decisis and the "law of the Circuit"*, 28 DePaul L.Rev. 565 (1979); Vestal, *Relitigation by Federal Agencies: Conflict, Concurrence and Synthesis of Judicial Policies,* 55 N.Car.L.Rev. 123, 124–25, 126–27, 167–69, 179 (1977), *see also* Note, *Securing Uniformity in National Law: A Proposal for National Stare Decisis in the Court of Appeals,* 87 Yale L.J. 1219, 1243 (1978), the simple fact is that it is a trademark of the IRS's litigation policy and

F.Supp. at 1303. Such a practice might appear particularly warranted where the opinion in a previous case is unclear, or where intervening developments in the law have somehow undermined the wisdom of the prior decision.

This does not mean, however, that a court must ignore the existence of applicable precedent adverse to the Government's position, when, after agreeing with that precedent, it is confronted by a request for attorney's fees. Where the applicable case law strongly contradicts the Government's legal position and yet the Government ventures to another forum, it should be forced to pay a price for its redundant litigation when it loses. In short, if the Government seeks to manufacture a precedent and consistently fails, *it* must pay the expenses incurred by those it has inconvenienced. *See Citizens Bank,* 558 F.2d at 1303–04 (IRS took position in order to create appellate vehicle; fees assessed).

In this case, the Court does not believe that the Government has successfully articulated any "special circumstances" that would render an award of attorney's fees unjust. The Government invoked a legal argument that had been previously and unequivocally rejected by the Tenth Circuit. The Government knew this fact prior to and during the litigation in the instant suit. The only reason why the Government chose to litigate the matter apparently stemmed from its ill-fated hope of obtaining a contrary ruling. *See id.* Standing alone, this is insufficient to invoke the "special circumstances" exception to liability for attorney's fees.

VIII. *Amount of the Fees Award.*

Having determined that the plaintiffs are entitled to an award of attorney's fees for work at both the trial and appellate levels, the Court must determine the extent of such an award. Although the plaintiffs have submitted an itemized listing of costs, they have not provided an itemized listing of the claimed forty-two hours spent by

their attorney at the trial level. Furthermore, although the plaintiffs have explained the activities that resulted in their attorney spending 6.7 hours in working on the appeal, they have not assigned a numerical value to each activity.

First, the Court directs the parties to confer informally in an attempt to reach an agreement as to the amount of a reasonable fee. Failing agreement, plaintiffs are directed to submit on or before March 23, 1984, an affidavit from their attorney that itemizes, to the extent possible, the efforts of the plaintiffs' counsel at both the trial and appellate stages. Plaintiffs' attorney should submit copies of his original time sheets. The Government will then have up to and including April 3, 1984, in which to file a response to the request.

It is therefore Ordered that plaintiffs' motion for an award of expenses, including attorney's fees, be, and it is hereby, granted. A ruling on the amount of such fees will be withheld pending compliance with the Court's directions, *supra.*

any attempts to change this policy are best left to the executive and legislative branches.